OPINION
{¶ 1} Cross Country Inns, Inc., appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court affirmed a decision of the Westerville City Council.
 {¶ 2} Appellant is the owner of a motel located in the city of Westerville near Interstate 270 ("I-270") and the State Street exit. The motel is located in a Planned Industrial District ("PID"). In January 1984, the Westerville Planning Commission ("WPC") granted a zoning variance permitting appellant to erect a sign to a height of 35 feet. At the time the variance was granted, the city's sign code permitted a maximum height of 15 feet. The city's sign code was subsequently amended and now allows signs to be only eight feet in height.
 {¶ 3} In August 1984, some eight months after the motel opened for business, appellant appeared before the Westerville Board of Zoning Appeals ("BZA") seeking an additional variance to raise the sign an additional eight feet to a height of 43 feet. The BZA minutes of August 9, 1984 state:
 {¶ 4} "* * * At that time, Mr. Benadum [appellant's vice president] stated Cross Country had commissioned several studies which indicated that even the proposed height of 35 feet would not allow sufficient visibility to attract Interstate 270 traffic which will provide the majority of business for the motel. Their primary problem is the topography of the site which has the motel sitting at the lowest point on the parcel with respect to the Interstate 270's entrance. He noted the difference between the elevation of the Interstate and the motel is substantial, almost 50-60 feet. This creates several visibility problems with respect to the line of sight between travelers along the Interstate and the identifying signage for the motel, especially as you travel from west to east. The problem is compounded by the fact that the motel is only three stories high and is difficult to observe sitting in that depression on the site * * *."
 {¶ 5} In 1999, appellant again applied for a variance with the BZA. Appellant requested that the BZA permit it to raise the sign to 50 feet. Appellant claimed that trees, planted by Westerville in the state right-of-way after the motel was built, had grown and were now obscuring visibility of the sign to the motoring public on I-270. Appellant further claimed that lack of sign visibility was causing it financial harm because most of its business patronage came from outside the Westerville area.
 {¶ 6} The BZA denied appellant's application but further noted that it might lack jurisdiction over the application because the original variance was granted by the WPC. Appellant took an appeal of the BZA decision to the Westerville City Council where the matter was tabled until appellant could pursue an application with WPC.
 {¶ 7} Appellant then filed an application for a development plan modification with the WPC. Appellant asked the WPC for a variance permitting the sign to be raised to a 60-foot height. The WPC staff report made reference to the possibility of trimming or removing the trees. Consequently, the WPC tabled the matter to permit appellant to appear before the Westerville Shade Tree Commission. The Westerville Shade Tree Commission refused to permit the trees to be moved or trimmed, but did recommend that the variance be granted. Thereafter, WPC denied appellant's application for a variance and appellant appealed the WPC's decision to the Westerville City Council.
 {¶ 8} On September 19, 2000, the Westerville City Council heard the appeals. At the hearing, Mr. Bassem Bitar, a Westerville Planning and Zoning Officer, was sworn before he testified. Mr. Bitar testified about the theme identification signs that direct travelers on I-270 to the motel. Mr. Bitar testified:
 {¶ 9} "* * * There is a theme sign on both sides of 270 indicating that lodging is available at Exit 29 which is the State Street exit. It does include Cross Country Inn and Knights Inn. Those have been established since the original approval."
 {¶ 10} Mr. Bitar also opined that granting the variance would set bad precedent:
 {¶ 11} "* * * [T]here are several businesses along the freeway frontage that could argue that they are freeway oriented. Whether they are hotels or whether they are restaurants or other establishments, and we feel that if this variance is approved, that would in fact set a precedent that other businesses of that nature could argue that they need variances. We feel that precedent is undesirable at this location, being a major entrance to the City of Westerville."
 {¶ 12} In response to questioning from Westerville's mayor, appellant's counsel stated that the Cross Country Inn was not losing money, but it had suffered a decline in business. The mayor then asked Mr. Bitar whether appellant had presented an "in-depth survey" showing a causal relationship between lack of sign visibility and the alleged business decline. Mr. Bitar responded that no written documentation had been submitted by appellant on the issue.
 {¶ 13} Following the September 19, 2000 hearing, Westerville City Council voted to affirm the decisions of the BZA and WPC. Appellant appealed the decision to the Franklin County Court of Common Pleas.
 {¶ 14} On March 14, 2002, the trial court entered judgment affirming the decision of the Westerville City Council. In its written decision, after listing the seven factors to be considered as set forth in Duncan v. Middlefield (1986), 23 Ohio St.3d 83, the trial court stated:
 {¶ 15} "There is no question that after weighing these seven factors, Council correctly refused the variance. Cross Country Inn has come to the City on three occasions requesting larger and larger sign variances despite the fact that it knew when it purchased the property for development that, at that time, there was a 15' limit on signage height. While the hotel's business is down according to its counsel, no one related that down turn to the signage visibility problem. For at least the last seven years, there have been `theme' signs on the freeway both eastbound and westbound notifying passing motorists that there is a Cross Country Inn at the Westerville exit. The variance, if granted in its most recent form, would be substantial in that it would be more than seven times the permissible height for any new sign. The variance would not be in keeping with Westerville's plan to eliminate large signs and make the entrance to the City aesthetically pleasing. No other signs of this size are present in the area."
 {¶ 16} Appellant presents the following three assignments of error:
 {¶ 17} "[1.] The decision of the Common Pleas Court is contrary to law because it failed to correctly apply the standard of `practical difficulties' and failed to recognize that the decisions below were contrary to law because improper standards for granting a modification of a variance were imposed.
 {¶ 18} "[2.] The decision of the Common Pleas Court constitutes an abuse of discretion.
 {¶ 19} "[3.] Appellant was denied due process of law in the proceedings before the Westerville Planning Commission and Westerville's Board of Zoning Appeals which accepted and relied on evidence that was not adduced under oath and imposed more restrictive standards than required by law and failed to afford a right of cross-examination, and presentation of evidence."
 {¶ 20} The standard of review for the court of common pleas for an administrative appeal is given in R.C. 119.12, which states in part:
 {¶ 21} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"
 {¶ 22} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is `more limited in scope.'" (Emphasis sic.) Henley v. Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142,147, quoting Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. "The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence." Ashland v. Gene's Citgo, Inc. (2000), Franklin App. No. 99AP-938. See, also, State ex rel. Baker v. State Personnel Bd. of Review (1999),85 Ohio St.3d 640, 643.
 {¶ 23} "`In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion "`* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" * * * Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. * * *
 {¶ 24} "`The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.'" Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, quoting Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257,260-261. (Citations omitted.)
 {¶ 25} A variance authorizes a landowner to establish or maintain a use which is prohibited by zoning regulations. Nunamaker v. Bd. of Zoning Appeals (1982), 2 Ohio St.3d 115, 118. "An area variance allows for the development of property in a manner which is generally not permitted by the applicable zoning regulations governing the particular zoned area, provided that the circumstances surrounding the development of the property satisfy certain standards." Workman v. Franklin Cty. Dist. Bd. of Health (2001), Franklin App. No. 00AP-905.
 {¶ 26} "The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties." Kisil, syllabus.
 {¶ 27} The Ohio Supreme Court in Duncan, supra, outlined seven factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered "practical difficulties":
 {¶ 28} "* * * (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." Id. at syllabus.
 {¶ 29} "When reviewing a denial of an application for a variance by a board of zoning appeals, there is a presumption that the board's determination is valid, and the burden of demonstrating the invalidity of the board's decision rests on the contesting party." Akwen, Ltd. v. Ravenna Zoning Bd. of Appeals (Mar. 29, 2002), Portage App. No. 2001-P-0029.
 {¶ 30} Appellant's first and second assignments of error are interrelated and thus shall be address together.
 {¶ 31} The primary argument of appellant regarding the first two assignments of error is that the trial court failed to correctly apply the "practical difficulties" standard under Duncan. We disagree.
 {¶ 32} The trial court notes at the outset that appellant has three times requested a variance to raise the height of the sign even though appellant knew at the time it purchased the property that there was a 15-foot limit on signage height. The second variance request that was denied in August of 1984, some eight months after the motel had opened, is particularly significant. The BZA minutes show that, at that time, appellant claimed that its 35-foot high sign did not allow sufficient visibility to attract I-270 traffic due to the sites' topography. In 1984, the trees were not a problem, but topography apparently was.
 {¶ 33} The BZA minutes of August 1984 undermine the main thrust of appellant's latest variance claim, i.e., that Westerville's planting of the trees and refusal to trim or remove them has taken away the I-270 visibility it was implicitedly granted in January 1984 when it was granted the 35-foot height variance. As appellee points out here, appellant's argument that the city is required to restore sign visibility by granting another variance must fail because one cannot restore what was never there. Relating this to the fifth Duncan factor, appellant not only purchased the property with knowledge of the zoning restriction, it also understood or should have understood in 1984 that topography would severely limit the value of its sign variance.
 {¶ 34} The trial court then finds that, while the motel business is down according to counsel, no one related that downturn to the signage visibility problem. This trial court finding is amply supported by the testimony of Mr. Bitar who indicated before the Westerville City Council that appellant had failed to provide written documentation showing a casual connection between lack of sign visibility and appellant's claim of a decline in business. Relating this to the first Duncan factor, there was evidence that the property in question can be of beneficial use to appellant without the variance. Appellant's counsel conceded that the Cross Country Inn was not losing money, although it was suffering a decline in business. The practical difficulty standard does not require that the property owner be provided with the greatest possible benefit from the use of the property. Duncan at 88.
 {¶ 35} The trial court further found that the existence of the freeway theme signs are a factor that negate the need for a variance. This finding is also supported by the testimony of Mr. Bitar. That appellant may disagree with the efficacy of the theme signs in drawing patrons to its motel does not detract from the finding of the trial court that is amply supported by the record. Relating this to the sixth Duncan factor, the property owners' claimed predicament is feasibly obviated through a method other than the variance, i.e., the existence of theme signs.
 {¶ 36} The trial court further found that the requested variance, in its most recent form, would be substantial in that it would be more than seven times the permissible height of any new sign. According to appellant, the trial court erred in calculating that the new variance request of 60 feet is more than seven times the permissible height of a new sign. Appellant is simply incorrect. The present limit on signs in Westerville is eight feet. Obviously, a request for permission to erect a 60-foot high sign is a request to erect a sign the height of which would exceed seven times the present sign height limit. The trial court did not abuse its discretion in determining that the requested variance would be substantial. This determination obviously relates to the second Duncan factor.
 {¶ 37} We also believe that the trial court's analysis satisfies the seventh Duncan factor in that substantial justice would not be done by granting the variance. We further note that the third and fourth Duncan factors, which were not directly addressed by the trial court, would not change the analysis here.
 {¶ 38} Accordingly, we overrule appellant's first and second assignments of error.
 {¶ 39} We now address appellant's third assignment of error. R.C.2506.03 provides that the trial court, in hearing the appeal from the administrative agency, shall be confined to the transcript filed pursuant to R.C. 2506.02 unless it appears that the appellant was not permitted by the agency to cross-examine witnesses purporting to refute his position, arguments and contentions or the testimony adduced before the administrative agency was not given under oath. R.C. 2506.03(A)(2)(c) and2506.03(A)(3). Citing those statutory provisions, appellant contends that he was denied "due process of law" when the WPC chairman spoke against granting the variance at the June 28, 2000 hearing. The minutes of the June 28, 2000 hearing show that, just prior to the WPC vote, chairman Treneff argued against granting the variance based upon five criteria that he presented.
 {¶ 40} According to appellant, because chairman Treneff's remarks were not sworn, and no rebuttal was allegedly permitted, appellant was denied due process of law when the Westerville City Council affirmed the WPC's decision. We disagree.
 {¶ 41} We begin with the observation that it was the decision of the Westerville City Council that was appealed to the court of common pleas. We previously noted that the testimony of Mr. Bitar before the Westerville City Council was sworn and that his sworn testimony supports the decision of the trial court to affirm the decision of the Westerville City Council. There is simply no evidence to suggest that the trial court conducted a Duncan analysis based upon unsworn testimony. There is indeed no evidence that the trial court viewed chairman Treneff's remarks as testimony or as evidence upon which it could rely to support its decision. Moreover, as appellee correctly points out here, there is no legal authority to support appellant's suggestion that a party to an administrative proceeding has the right to cross-examine the decision-making body. In short, appellant's third assignment of error lacks merit and is thus overruled.
 {¶ 42} Accordingly, we find that the trial court did not abuse its discretion in affirming appellee's decision denying appellant's variance request. Appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN, J., concurs.
BRYANT, J., dissents.
BRYANT, J., dissenting,
 {¶ 43} Being unable to agree with the majority opinion, I respectfully dissent.
 {¶ 44} Pursuant to R.C. Chapter 2506, appellant appealed to the Franklin County Court of Common Pleas from the decision of the Westerville City Council denying appellant's requested variance. Under R.C. 2506.03, the "hearing of such appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed pursuant to section 2506.02 of the Revised Code unless it appears, on the face of the transcript or by affidavit filed by the appellant" that one of the defects specified in R.C. 2506.03(A) exists.
 {¶ 45} Appellant filed a motion requesting that the common pleas court allow appellant to present additional evidence. Appellant apparently persuaded the common pleas court, as the court referred the matter to a magistrate to take evidence. As the proceedings before the magistrate commenced on October 16, 2001, the magistrate explained that "[t]his is going to be kind of an evidentiary hearing. * * * What happened was the evidence presented at the city council was more or less by testimony, not by sworn testimony, by counsel, and Mr. Igoe has alleged that there was some irregularities in the proceedings and asked if he can present some additional evidence * * *." (Tr. 3.) The magistrate noted she had viewed the premises and, returning to the court, she heard sworn testimony in the matter.
 {¶ 46} At the conclusion of the evidentiary hearing, the magistrate set a briefing schedule, calculated to have all briefing completed by the end of October 2001. The parties complied with the magistrate's instructions and filed all briefs by October 29, 2001.
 {¶ 47} For reasons not explained in the record, the magistrate did not render a decision. In the absence of a decision from the magistrate, neither party filed objections. Nonetheless, without a transcript of the evidence presented to the magistrate and without hearing the evidence itself, the common pleas court issued a decision and judgment entry affirming the decision of the Westerville City Council. In doing so, the trial court erred.
 {¶ 48} One purpose of the magistrate's decision is to inform the court of the evidence the magistrate has heard and of the factual findings arising from that evidence. Here, the common pleas court did not have the benefit of the magistrate's findings of fact because the magistrate did not issue a decision. Even though the common pleas court did not have the magistrate's decision, a transcript of the evidence, or the opportunity to hear the evidence itself, the court determined the matter. The common pleas court should have requested a decision from the magistrate, allowed the parties the opportunity to object and then rendered a decision. Alternatively, it could have vacated the order of reference, heard the evidence itself, and rendered a decision based on the evidence it heard, as well as the remainder of the record. Because the common pleas court did neither, the common pleas court determined appellant's appeal without the relevant evidence. The result renders the R.C. 2506.03 provision allowing additional evidence meaningless and the proceedings unfair.
 {¶ 49} Nor can I fault appellant for not objecting to the common pleas court's procedure. Because no magistrate's decision was filed, appellant had no reason to expect the court to render a decision in the matter. Moreover, when the court decided the case, it issued a simultaneous decision and judgment entry. As a result, appellant did not have the opportunity to file a motion for reconsideration to point out the error.
 {¶ 50} The first sentence of argument under appellant's second assignment of error in its appellate brief in this court asserts the "Common Pleas Court relied on material not properly in the record as evidence." (Appellant's brief at 18.) Because I agree, I would reverse and remand the matter to the common pleas court either to return the matter to the magistrate for a decision and further proceedings under Civ.R. 53, or to take the matter back from the magistrate, hear the additional evidence and render a decision.