DAVIS et al., Appellants,

v.

ZONING BOARD OF APPEALS, VILLAGE OF LOCKLAND, et al., Appellees.

[Cite as *Davis v. Lockland Zoning Bd. of Appeals*,
154 Ohio App.3d 407, 2003-Ohio-4964.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020795.

Decided Sept. 19, 2003.

C. Francis Barrett and M. Michele Fleming, for appellants.

Timothy M. Burke, for appellees.

GORMAN, Judge.

{¶ 1} This is an appeal from the denial of several area variances by the Zoning Board of Appeals for the village of Lockland. The board's ruling prevented the Reverend Jeffrey A. Davis and H.O.P.E. Word Church of Christ from establishing a church in a vacant building at 424 W. Wyoming Avenue. The trial court adopted a magistrate's decision affirming the zoning board. In their first assignment of error, Rev. Davis and his church contend that the lot-size and setback requirements imposed by the zoning regulations were not a reasonable

exercise of the police power and, as applied to churches, improperly burdened the exercise of religious freedom. In their second assignment of error, they argue that the zoning board applied an unreasonable construction to the requirement that the church have off-street parking by insisting that the church have sufficient on-site parking. For the following reasons, we affirm.

{¶ 2} Rev. Davis and his church currently are situated at 420 W. Wyoming Avenue, next door to the proposed location. The church has been sharing space at that address with the Hope Outreach Center, a nonprofit organization performing community, educational, and family services that is operated by Rev. Davis's wife. The outreach center and the church operate out of a former Kroger store that additionally houses, at separately designated addresses (420A, for example), a food-and-clothing center and a Habitat for Humanity office. These separate entities form part of what is called the "Valley Caring Center."

{¶ 3} Rev. Davis and his church wished to move into the empty building at 424 W. Wyoming, which was formerly occupied by a medical supply business that used the premises for its office and warehouse. The use of the building as a church did not present a zoning problem, since the area was zoned for residential, office, or commercial purposes, called "R–O–C." A church was a permitted use in an R–O–C district.

{¶ 4} The Lockland zoning regulations imposed additional site requirements for a lot to be the site of a church, however, and it is undisputed that the proposed location did not satisfy these. First, the lot was required to be a minimum of one acre. The proposed lot was not. Second, the lot had to have certain minimum front, side, and rear setbacks. The proposed lot had none of these.

{¶ 5} Aware that the lot did not comply with the zoning code for use as a church, Rev. Davis and his church applied to the village's zoning board of appeals for a variance—or, actually, variances. As part of their application, Rev. Davis and his church noted that they would continue to use the parking spaces that had already been afforded to them next door at 420 W. Wyoming. Their application stated that the Board of Trustees of the Valley Caring Center had already approved their use of the next-door parking lot for parishioners going to church at 424 W. Wyoming.

{¶ 6} The zoning board denied the request, noting that the use would require a total of four variances from the minimum lot-size, width, side-yard, and front-yard requirements. The board stated, "Needing *four* (4) variances sent a strong signal to the Board that this structure is simply not suitable for your proposed use." The denial also stated the zoning board's concern that the building lacked adequate capacity for use as a church and cited a report of a fire inspector that it could hold a maximum of 52 people with tables and chairs, and 99 people with just chairs. The denial concluded, "We do, however, want you to remain in Lockland.

We are aware of, and impressed by, the work of Vision of Hope. You are doing good things for the families of Lockland!  Mr. Jim Lothian, a local realtor, has expressed a willingness to assist you in locating a suitable site here in Lockland. We encourage you to call him * * *."

{¶ 7} According to Rev. Davis, he contacted the mayor's office and the realtor, but the contacts did not result in a proposed alternative site.  Meanwhile, Rev. Davis and his church appealed from the zoning board's decision to the court of common pleas.  Due to inadequacies in the administrative record, the magistrate conducted a hearing on July 5, 2002, and issued a decision on September 3, 2002. In the decision, the magistrate noted that, at the hearing, the focus of the discussion had shifted from the size of the lot and the adequacy of the setbacks to the "on-site off-street parking issue," upon which the majority of the testimony and evidence had been offered.  The magistrate appeared to have resolved the issue of the off-street parking by noting that Rev. Davis and his church had offered "no documented agreement which provides that Church parishioners/invitees would have the right to park in the lot [at 420 W. Wyoming] at all times." The magistrate then restated the board's findings in its letter of denial and found that the decision was neither "unconstitutional, illegal, arbitrary, capricious, unreasonable, [n]or unsupported by the preponderance of substantial, reliable, and probative evidence."

{¶ 8} Rev. Davis and his church filed objections to the magistrate's report, including a constitutional challenge to the zoning restrictions.  The trial court, however, overruled the objections and found specifically that the zoning regulations did not unconstitutionally burden the parishioners' freedom of religious practice.

■ {¶ 9} In their first assignment of error, Rev. Davis and his church now argue that the lot-size and setback requirements imposed upon churches by the Lockland zoning code are unreasonable, arbitrary, and unduly burdensome. They argue that there is no standard size for a church, which theoretically could have a congregation of anywhere from two to two thousand.  In this regard, we note that the excerpts from the zoning code given to us by the parties do not contain any regulatory definition of what constitutes a "church" in terms of the size of the congregation.  Therefore, Rev. Davis and his church argue, it is unreasonable to impose a blanket one-acre restriction on the lot size for all churches.  To further support their argument that the restrictions are arbitrary and unreasonable, they maintain that "numerous" other uses in an R–O–C district do not have such minimum-lot-size and setback restrictions.

{¶ 10} In response to these arguments, we note first that there are many other uses permitted in an R–O–C district that are, indeed, subject to lot-size and setback restrictions, including schools, extended-care facilities, and multi-family

dwellings. It simply is not true, therefore, that Lockland has singled out churches as the sole R–O–C use subject to lot-size and setback restrictions. It is also true, however, that business and professional-office uses are exempt from such restrictions. It is further true that the actual restrictions imposed on a church are greater in degree than those imposed on other uses, such as a school, but not greatly so. On the other hand, the code appears to impose off-street parking requirements on all uses, even business and office, although different uses have different parking-space requirements.

{¶ 11} According to Rev. Davis and his church, the lot-size and setback requirements imposed by the code upon churches have no reasonable bearing upon a "small" church such as the H.O.P.E. Word Church of Christ. It is debatable, however, whether the church is actually small enough to successfully make such an argument. Rev. Davis testified at the hearing that his congregation ranged from 90 to 100 people. Even this number was sufficient to have caused the fire inspector concerns over the building's capacity, which he limited to 100 on the assumption that no tables would be set up. As noted by the village, there always remains the possibility that the church may attract a larger congregation over time.

{¶ 12} In support of their position, Rev. Davis and his church cite *Young Israel Org. v. Dworkin* (1956), 105 Ohio App. 89, 5 O.O.2d 387, 133 N.E.2d 174. We find this case inapposite, however, because the restrictions in *Dworkin*, while permitting a wide variety of mixed uses in a residence district, denied the use of either a church or a temple without a special permit. Here, the village of Lockland has specifically included a church as a permitted use, subject only to certain restrictions that, as we have discussed, are of the same type applied to certain other uses. There is no indication, as there was in *Dworkin*, that the Lockland zoning authority operated under the assumption that a church use was inimical to the general welfare. In fact, according to the testimony, there were two churches within the R–O–C district very near 424 W. Wyoming—the Church of Christ and the Church of the Nazarene.

{¶ 13} The Reverend and his church also argue that the restrictions that Lockland places upon a church use violate the Free Exercise Clause of the First Amendment. To support this argument, they refer to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), codified in Section 2000cc, Title 42, U.S.Code. The Act prohibits the government from imposing "substantial burdens" through land-use regulations upon the free exercise of religion by persons, religious assemblies, or institutions, unless the government can show that the regulation is the least restrictive means of promoting a compelling governmental interest. Section 2000cc(a), Title 42, U.S.Code. To this end, the Act specifically prohibits the government from imposing a land-use regulation,

including a zoning regulation, see Section 2000cc–5(5), Title 42, U.S.Code, "in a manner that treats a religious assembly or institution on less than equal terms" with a non-religious assembly or institution, or that "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." Section 2000cc(b), Title 42, U.S.Code. Under the Act, once the claimant produces evidence to show a violation of the Act or the Free Exercise Clause, the burden is then shifted to the government to show that the challenged burdens are the least restrictive means to promote a compelling interest. See *Murphy v. Zoning Comm. of the Town of New Milford* (D.Conn.2001), 148 F.Supp.2d 173, 188.

{¶ 14} RLUIPA, it must be pointed out, does not completely strip zoning authorities of their right to impose lot-size or setback requirements. The Act requires, rather, that churches not be subjected to zoning regulations that treat them on less than equal terms with other land uses, or that unreasonably burden the freedom of church members to assemble and worship. Municipal corporations maintain their authority under R.C. 713.06 to establish "limitations and regulation of the height, bulk, and location, including percentage of lot occupancy, set back building lines, and area and dimensions of yards, courts, and other open spaces, and the uses of buildings and other structures and of premises in such zones or districts."

{¶ 15} Here, as noted, other uses in an R–O–C district such as schools and extended-care facilities are also subject to lot-size and setback requirements of varying degrees under the Lockland zoning code. The only uses that are not subject to such requirements are office and business uses. Given the rather obvious public-safety issues involved in such public uses as schools, hospitals, and churches, the village would have been capable of articulating any number of valid, if not compelling, reasons for its additional regulations. The village, however, has chosen not to defend such regulations other than to state in conclusory fashion that they are necessary for the public welfare. The village relies heavily on the argument that the regulations do not substantially burden Rev. Davis and his congregation's practice of their religion, and that therefore the provisions of RLUIPA do not come into play. The primary thrust of the village's argument, in this regard, appears to be that Rev. Davis and the church are free to practice their religion elsewhere, including their present base of operations at 420 W. Wyoming.

{¶ 16} Even if we were to assume for the sake of argument that the zoning code impermissibly treats churches differently under the RLUIPA in terms of lot-size and setbacks, there is still the issue of off-street parking. As we have noted, all uses are subject to the off-street parking regulations, and so this is not a case of churches being treated differently by the zoning code. If Rev. Davis and his congregation had wished to use the property at 424 W. Wyoming as, for

example, a bookstore to sell religious tracts, they would still have had to solve the problem of the complete lack of off-street parking.

{¶ 17} At the hearing before the magistrate, the village presented the issue of off-street parking as the primary reason for denying the variance. Indeed, the Mayor of Lockland, Jim Brown, testified that were it not for the parking issue, he would have been entirely in favor of the church's move to 424 W. Wyoming. The magistrate's decision affirming the denial stressed the lack of any formal agreement between Rev. Davis and his church and the owners of the property at 420 W. Wyoming granting them the right to continue parking there. At the hearing, Rev. Davis testified that the leaseholder of the property was the Vision of Hope and that the Vision of Hope had a written yearly lease subject to renewal. He also testified, however, that the church had access to another lot, located east of 420 W. Wyoming, to accommodate any spillover parking. He stated that this lot, which was sometimes used for stadium parking, normally had a wire across it with a padlock, but that he had been given a key and the church could use it whenever it wished.

{¶ 18} Under the Lockland zoning code, a church is required to have one parking space for every five seats. The two churches nearby, the Church of Christ and the Church of the Nazarene, met this requirement by owning different parcels, one of which was used for parking. Jim Boehl, a Lockland zoning-enforcement officer, testified that he considered it significant that the two other churches owned the separate parcels they used for parking. With regard to the ad hoc parking arrangements suggested by the Reverend and his church, he stated, "You have the three businesses that are there [at 420 W. Wyoming], and put a church on top of that, providing that the church has access to that, seems like that would be quite a bit of traffic and you don't have enough parking spaces in there." He testified that the parking lot was "pretty full" the few times he had seen it when church services were taking place at 420 W. Wyoming.

{¶ 19} Boehl testified further that Rev. Davis and his church had not complied with a zoning requirement that a drawn-to-scale plot plan of the proposed parking be submitted. More significantly, Boehl testified that the proposed shared-parking plan violated a provision of the Lockland zoning code that provided that "no * * * off-street parking required for a structure or use for the purpose of complying with the zoning code shall be permitted for the same or similar requirement for another structure or use."

{¶ 20} Mayor Brown testified that he was very familiar with the location at 424 W. Wyoming. He testified that the off-street parking requirement was of particular concern to the residents on the street, who did not want to compete with business uses for on-street parking. He testified that the former business at the site, Able Medical Supply, was the source of many citizen complaints

because of its failure to have sufficient off-street parking. Although he conceded that there was a large lot close by that could be used for additional parking, he disagreed that this additional parking would necessarily forestall citizen complaints. He stated, "It does supply sufficient parking. But I know human nature and human nature is if they can't park right in front of the church, they're going to park across the street, all those parking spaces in front of those houses to the left there."

{¶ 21} In rebuttal to the mayor's testimony, Rev. Davis testified that if he requested his parishioners not to park on the street, but only at either the lot at 420 W. Wyoming or the spillover lot east of it, they would do so. According to Rev. Davis, there had never been a shortage of parking for the church at 420 W. Wyoming, and there had never been a problem with his parishioners' parking on the street. He stated that even though such parking would be legal for a period of two hours, his parishioners would be instructed not to resort to parking on the street.

{¶ 22} Finally, on recross-examination, Rev. Davis conceded that if the owner of 420 W. Wyoming decided to "use the parking area for something else," he had every right to do so. He also acknowledged that the spillover lot was scheduled to be used for three Moeller High School Friday night football games scheduled at the Lockland Coliseum, but he also stated that his church would have "first rights" to the parking area and that the Friday night scheduling would not conflict with any church activities, including Friday choir practice, since it began at 4 p.m. He was forced to concede, though, that his church's "right" to use the lot was not legally enforceable. He also acknowledged that a neighbor had testified before the zoning board and objected to the church's relocating to 424 W. Wyoming on the grounds that it would cause traffic problems and devalue her property.

{¶ 23} According to Rev. Davis and his church, the foregoing testimony was sufficient to establish the "practical difficulties" necessary to justify an area variance. See *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 12 OBR 26, 465 N.E.2d 848; *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692. As we have noted before, however, the scope of judicial review of a zoning board's decision is "very limited and unusually deferential." *Klein v. Hamilton Cty. Bd. of Zoning Appeals* (1998), 128 Ohio App.3d 632, 636, 716 N.E.2d 268. "The board's decision on such matters is presumed to be valid, and the burden is upon the party contesting the board's determination to prove otherwise." Id., citing *Consol. Mgt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 240, 6 OBR 307, 452 N.E.2d 1287. The court of common pleas cannot substitute its judgment for that of the zoning board so long as the board's decision is supported by a preponderance of reliable, probative, and substantial evidence. *Kisil,* supra, 12

Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848. Review by this court is even more circumscribed: we are obliged to affirm the court of common pleas unless we are able to say that, as a matter of law, the decision is not supported by a preponderance of reliable, probative, and substantial evidence. Id.; see, also, *Klein,* supra, 128 Ohio App.3d at 636–637, 716 N.E.2d 268.

{¶ 24} The Ohio Supreme Court has stated that "practical difficulties" are present when an area requirement unreasonably deprives the property owner of a permitted use. *Duncan,* supra, 23 Ohio St.3d at 86, 23 OBR 212, 491 N.E.2d 692. As stated by the court, "The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." Id. Of the factors to be considered, one is whether the property owner purchased the property with knowledge of the restrictions, and another is whether granting the variance would do substantial justice. Id.

{¶ 25} Here, we are not concerned with the property owner, so the issues before us are qualitatively different. There is no question, for example, of the property owner being deprived of a reasonable return or beneficial use of the property—neither party has made reference to the wishes or financial consider-ations of the owner concerning the variance. Nor does the record show that either Rev. Davis or his church has entered into a formal lease on the property. The application for a variance was entirely prospective, therefore, and was merely an attempt to alter the status quo. The transcript of the proceeding does not show that the church was motivated in its desire to occupy the building by any serious hardship imposed by its current shared arrangement with the Hope Outreach Center. Indeed, the church's interest in the building seemed to stem largely from its convenient location. But simply because the building was conveniently located did not, in our view, equate to "practical difficulties" such as would, as a matter of law, have required the zoning board to grant a variance with respect to the off-street-parking requirement.

{¶ 26} Nor do we conclude that the zoning board was required to accept the church's proposed ad hoc parking arrangements as a suitable substitute. The zoning regulations would appear to expressly prohibit using another property's parking to satisfy the off-street parking requirement. Even if this obstacle could be overcome, it is clear from the hearing testimony that part of the village's concern was that such arrangements were not legally enforceable, and were thus subject to change if a variance were granted, leaving the church without any off-street parking and a congregation of close to 100 parishioners. As noted, the two other churches in the neighborhood had satisfied the off-street parking require-ment by purchasing additional property, thus guaranteeing that adequate parking space would be available to them as an incident of their ownership rights. Here, unfortunately, Rev. Davis and his church were entirely dependent upon the good

graces of other people, who always have the option of changing their minds. As noted, the Vision of Hope was merely another leaseholder, and it is entirely possible that its landlord would choose not to renew its yearly lease, leaving the church with only the spillover parking lot, which, again, the church was allowed to use only at the sufferance of the owner.

{¶ 27} Because we cannot say, as a matter of law, that the decisions of the zoning board and the court of common pleas were not supported by the preponderance of reliable, probative, and substantial evidence, we overrule Rev. Davis and the church's first assignment of error. In their second assignment of error, Rev. Davis and his church argue that the zoning authority erred by construing the requirement for off-street parking as mandating on-site parking. It is our understanding of the evidence presented at the hearing, however, that the village's objection was not necessarily that the proposed parking arrangements were not on-site, but that they were merely at the sufferance of other persons. Those persons, as noted, had every right to withdraw their permission, thus leaving the church with no off-street parking whatsoever and creating the potential for traffic congestion and a flood of citizen complaints regarding the lack of residential on-street parking.

{¶ 28} Accordingly, both assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

HILDEBRANDT, P.J., and PAINTER, J., concur.