Keating, J.
These are cross appeals in an article 78 proceeding from an order of the Appellate Division, Second Department, which modified an order of the 'Supreme Court, Nassau *141 County, Special Term (Smith, J.), upholding the determination of the Board of Zoning Appeals and dismissing the petition.
Petitioners are the owners of slightly more than two acres (90,000 sq. ft.) of property situated in the Village of Brookville, Nassau County. At the time of the enactment of the village’s original zoning ordinance in 1935, petitioners’ property was part of a large estate acquired by Ormond Smith in the 1920’s. Smith subdivided the property in 1947, selling the subject property to Mark Baton who then sold it to petitioners in 1957. Situated on the property at all relevant times were three structures:
1. The Main Dwelling. This house was the principal residence of the Smiths, the Batons and now petitioners.
2. The Gatehouse. This brick cottage with two bedrooms, bath, kitchen, full cellar and unfinished attic was occupied by Smith’s gardener until Mark Baton purchased it in 1947. Thereafter it was occupied first by Baton’s married son and his family ■and then by rent-paying tenants. Petitioners have continued to rent the gatehouse (unfurnished) and receive $145 monthly. It is for this rental use that the Appellate Division ordered a variance.
3. The Guest House. This one-bedroom brick cottage behind the garage was established by Mrs. Eaton during her ownership and is currently rented for $125 monthly (furnished). It is for this rental use that the Appellate Division affirmed the denial of a variance.
The history of the zoning ordinances is as follows:
1. The original zoning ordinance of 1935 permitted single-family detached principal dwellings, with or without accessory buildings, on a lot area of not less than two acres for each principal dwelling. Accessory building was defined as “ a building subordinate to the principal building on a lot and used for purposes customarily incidental to those of the principal building.” The ordinance also allowed for “ outbuildings and houses to be used by persons employed on the premises and other accessory uses customarily incidental to any of the above permitted uses ”.
2. In 1950, the definition of an accessory building was amended to read ‘1 a building such as a private garage, private swimming pool * * * which is subordinate and accessory to the prin *142 cipal building on the same lot and which is used for purposes customarily incidental to those of the principal building.”
3. In 1961, this was again amended and this time specifically excluded use as a residence except by full-time employees of the principal residents: tl Guest houses or buildings designed and equipped to be used for habitable purpose (by other than said servants, caretakers or chauffeurs) are not accessory buildings and are, therefore, not permitted. No use carried on as a business shall be permitted in any accessory building. The renting to a tenant of any accessory building alone and not in conjunction with the principal building or principal use shall constitute a prohibited business use.”
4. In 1962, the ordinance was re-enacted in substantially the same form. In current form, therefore, the ordinance distinguishes the status of occupants, not the extent or nature of use; that is, residence by servants is permitted but residence by nonpaying guests, relatives or paying tenants is prohibited.
Initially, petitioners appealed to the Board of Zoning Appeals from a ruling of the Building Inspector to the effect that the use of the gatehouse and guest house for rental violated the zoning ordinance. Petitioners argued that the use was a valid nonconforming use and also sought a variance which would permit continuation of the rentals. After a hearing, the board found that there was no valid nonconforming use and that petitioners had failed to present evidence sufficient to warrant the granting of a variance as to either structure.
At Special Term, these findings were affirmed. On appeal, the Appellate Division agreed that there was no valid nonconforming use, upheld denial of a variance as to the guest house, but found that a variance should have been granted as to the gatehouse and modified the order, directing that such variance be granted.
The board has appealed from this modification while petitioners have cross-appealed from so much of the order as denied relief which they requested from the board and from Special Term.
The Board of Appeals found initially that at no time since its original enactment in 1935 has the zoning scheme permitted the renting of an accessory building to a tenant for use as a residence, and that prior to this prohibition neither the gatehouse *143 nor the guest house was rented to tenants. This finding was upheld at Special Term and by the Appellate Division.
Petitioners argue that in the case of the gatehouse the gratuitous tenancy prior to the ordinance should afford a basis for its lawful continuance as a tenancy for hire. Petitioners then rely solely on the case of Matter of Clune v. Walker (10 Misc 2d 858, affd. 7 A D 2d 651), which they cite at length. Petitioners’ argument, however, fails to take note of the fact that the gratuitous tenancy was by the Smith gardener and, therefore, was, and still is, a permitted accessory use and can form no basis for a valid nonconforming accessory use. Until 1947 at least, there was no violation of the use provisions of the ordinance. The guest house, which did not even exist as a living quarter until after 1947, was never used other than as a prohibited rental residence and clearly it has no basis for a valid nonconforming use. Petitioners’ reliance on Matter of Clune v. Walker is misplaced as Glune was a variance case and not a nonconforming use case.
The Appellate Division properly affirmed the denial of a variance for the guest house because difficulty or hardship was wholly self-imposed, in that the building was made into living quarters and rented to tenants long after the adoption of the zoning ordinance prohibiting such rental. However, the question of a variance for the gatehouse is a closer one and is not precisely covered by any cases decided in this court.
Section 179-b of the Village Law provides in part: “ Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, the board of appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures, or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.”
Special Term affirmed the board’s denial of a variance, saying that even if the variance requested were one of area rather than use, the court was unable to find any evidence of practical difficulty or unnecessary hardship to sustain a finding in favor of petitioners. The Appellate Division set aside this ruling stating that, considering the circumstances here, the good-faith use of *144 the gatehouse as a residence for many years antedating the zoning ordinance, and following the rationale of Matter of Gruen v. Simpson (153 N. Y. S. 2d 287, affd. 3 A D 2d 841) and Glune (supra), a variance should have been granted.
The case for petitioners rests first on the fact that the variance sought here is an area variance rather than a use variance. The gatehouse is a principal family residence and petitioners ;eek to vary from the requirement that all such residences need be on separate two-acre lots. An applicant for an area variance need not. establish special hardship. It is sufficient to show practical difficulties or unnecessary hardship. Whereas some cases have required a petitioner for a use variance to show that a particular property suffers a singular disadvantage or special hardship through the operation of a zoning regulation, that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood (Matter of Hickox v. Griffin, 298 N. Y. 365; Matter of Otto v. Steinhilber, 282 N. Y. 71), this “ special hardship ” rule has been limited to use variances and such proof is not a necessary condition to the granting of an area variance. “A change of area may be granted on the ground of practical difficulties alone, without considering whether or not there is an unnecessary hardship.” (Matter of Village of Bronxville v. Francis, 1 A D 2d 236, 238, affd. 1 N Y 2d 839.)
There is good reason for the distinction between use and area variances and the requirement of a higher standard of proof of hardship for the former. When the variance is one of area only, there is no change in the character of the zoned district and the neighborhood considerations are not as strong as in a ase variance. For example, in Bronxville (supra), the question was whether a bank could make the floor area of its new building more than 1 and % times the area of its lot despite an ordinance limiting the total floor area of a building to 1 and % times the lot. There was no question of change of character of neighborhood since the bank was a proper use. In such a case, it seems fair that only practical difficulty without unique or special hardship need be proved to obtain a variance.
To this end, it can be said for petitioners that (1) the gatehouse was designed, built and used for separate residential occupancy for many years and antedates the original ordinance, *145 (2) that it represents a substantial capital investment, adds materially to the value of the property and yields a desirable income, (3) that the prior owners rented the gatehouse for several years and petitioners purchased in the belief that they could validly do so, and have done so in good faith without objection by neighbors or (until now) the board or its inspector, (4) the only permissive accessory use for this cottage would be for servants, and domestic help employed these days to serve a nine-room household (such as the main household here) are rarely provided with separate living quarters, and (5) there being no other appropriate uses for the gatehouse, petitioners are faced with a Hobson’s choice between continued payment of taxes, which have increased very rapidly of late, or demolition.
The instant case is thus very similar to Gruen and Clune {supra) in which the Appellate Division found that refusals to grant the area variances sought were arbitrary and capricious, and we are satisfied that petitioners have made a sufficient showing of practical difficulties. The board, however, interposes the objection that petitioners should be denied relief because they purchased the property with notice of the restriction and because whatever difficulties or hardships exist are self-imposed due to the 1947 subdivision by the predecessor, Smith.
We find these arguments unpersuasive first because the cases creating a bar to relief for purchasers with notice are use variance cases (see Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86) and such a rule is not necessarily applicable to area variance cases. In the instant case, the Eatons—who also rented the gatehouse—would have been entitled to seek a variance without being automatically barred and we can see no reason to place their successors in any worse position.
Furthermore, while it is true that a landowner (or his predecessor) should not be allowed to create a condition and then assert that condition as an excuse for a variance, such is not the case here. The gatehouse existed as a separate residence long before the first ordinance and, when it came time to subdivide in 1947, there was no need for Smith to set aside two separate acres for the gatehouse since the occupancy by his gardener was clearly a permitted accessory use. Even if Smith had foreseen the use by Mrs. Eaton’s son, it is unlikely he would have acted differently since the ordinance in 1947 did not clearly state the *146 intention to differentiate occupancy by servants from occupancy by nonpaying guests or relatives. The provision of the ordinance that accessory buildings could be used 11 for purposes customarily incidental to those of the principal building ’ ’ — while not allowing rental use—would quite possibly have been interpreted as allowing use by relatives. It was not until the 1961 amendment that the ordinance clearly stated its intention to make occupancy by servants permissible and to make no distinction between occupancy by nonpaying relatives and tenants, prohibiting both uses. Therefore, had the gatehouse been continuously occupied by nonpaying relatives (such as Baton’s son) to the present time, it may well have been a valid nonconforming use or at least a very strong case for variance. Since, by the ordinance’s own ruling and the board’s own argument, there is no distinction now between occupancy by nonpaying relatives and occupancy by tenants, petitioners should now be no worse off by having tenants than if they had relatives in the gatehouse, and, therefore, should be granted a variance in either case.
Though the interpretation of the ordinance as of 1947 is not the question before us, the preceding discussion does go to the heart of the matter. The point is that granting of the variance will not really change the essential residential character of the neighborhood and need not negate the village’s power to distinguish between principal and accessory uses. The board offered no evidence of adverse effects or any countervailing considerations of public safety, health or morals. The only affidavits submitted by neighbors were favorable to petitioners. The variance would involve no change in the size or number of buildings on the property or in the size and number of families. The same buildings and the same number of families were there well before the original ordinance was even passed. The issue is not whether the gatehouse may be occupied but whether it may be occupied by rent-paying tenants. The only practical effect of barring the rental of the gatehouse is to deprive the owners of a beneficial use thereof while forcing them to demolish it or have it remain vacant.
The question of a variance involves the balancing of community interests and the right of an owner to reasonable use of his property. The effect of having an area variance with the *147 vital factor of no real change to the character of the neighborhood, rather than a use variance, is to alter the standard by which individual hardship is measured. We agree with the Appellate Division that petitioners have demonstrated practical difficulties in the way of carrying out the strict letter of the ordinance, and a variance should be granted in order that the spirit of the ordinance may be observed, public safety and welfare secured and substantial justice done. The order of the Appellate Division is affirmed, without costs.
Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke, Soileppi and Bergan concur.
Order affirmed.