DUNCAN ET AL., APPELLEES, *v.* VILLAGE OF MIDDLEFIELD, APPELLANT.

[Cite as Duncan v. Middlefield (1986), 23 Ohio St. 3d 83.]

(No. 85-350—Decided April 11, 1986.)

*Richard A. Duncan,* for appellees.

*Kelley, McCann & Livingstone, Stephen M. O'Bryan* and *John L. Habat,* for appellant.

Sweeney, J. In *Kisil* v. *Sandusky, supra,* this court held in the syllabus:

"The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties."

In adopting the lesser, practical difficulties standard for area variances, we relied, in part, upon the analysis of the New York Court of Appeals in *Matter of Hoffman* v. *Harris* (1966), 17 N.Y. 2d 138, 269 N.Y. Supp. 2d 119, 216 N.E. 2d 326. In *Harris,* the court effectively determined that in reviewing an application for an area variance, where "neighborhood considerations are not as strong as in a use variance," *id.* at 144, the "spirit" rather than the "strict letter" of the zoning ordinance should be observed so that "substantial justice [is] done," *id.* at 147. In observing the spirit of an ordinance and attempting to do substantial justice, a zoning board of appeals or a reviewing court necessarily must weigh the competing interests of the property owner and the community. When an area variance is sought, therefore, the property owner is required to show that the application of an area zoning requirement to his property is inequitable.

While existing definitions of "practical difficulties" are often nebulous, it can safely be said that a property owner encounters "practical difficulties" whenever an area zoning requirement (*e.g.,* frontage, setback, height) unreasonably deprives him of a permitted use of his property. The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable. The practical difficulties standard differs from the unnecessary hardship standard normally applied in use variance cases, because no single factor controls in a determination of practical difficulties. A property owner is not denied the opportunity to establish practical difficulties, for example, simply because he purchased the property with knowledge of the zoning restrictions. *Kisil, supra,* at 33; cf. *Consolidated Mgmt., Inc.* v. *Cleveland* (1983), 6 Ohio St. 3d 238.

The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. See, generally, 3 Anderson, American Law of Zoning (2 Ed. 1977), Variances, Section 18.47 *et seq.; Wachsberger* v. *Michalis* (1959), 19 Misc. 2d 909, 191 N.Y. Supp. 2d 621.

The appellant, village of Middlefield, asserts that, in spite of the board's finding that the Duncans had not suffered an "unnecessary hard-

ship" as a result of the zoning restriction in question, other relevant findings by the board show that the Duncans also did not suffer "practical difficulties" as a result of the restriction. Specifically, the village points to the board's findings that construction of an eight-unit dwelling on the Duncans' lot would "alter the essential nature of the neighborhood" and "not represent the minimum variance that would afford relief or the least modification possible so as to provide a reasonable use." The village contends that these findings and the evidence in the record reveal that community interests outweigh the competing interests of the Duncans in this case. We agree.

Upon consideration of the relevant factors for a practical difficulties determination, as enumerated above, it is clear that the Duncans have not encountered the practical difficulties needed to warrant the approval of their application for variance. First, the Duncans could have made beneficial use of their property and received a reasonable return either by construction of additional duplexes (which would not have required a variance from existing frontage requirements) or by construction of a four-unit addition to the existing dwelling as per the variance granted in April 1980. The Duncans offered no evidence to show that these plans were not economically feasible, and in previous hearings before the board they indicated only that such plans were *less* feasible than the construction of the proposed eight-unit dwelling.

Second, it cannot easily be determined from the record whether the requested variance was "substantial," especially because the evidence presented did not show that other variances had been granted to allow the construction of multi-family dwellings on lots having less than one hundred feet of frontage. In any event the available evidence does not indicate that the Duncans were treated differently than any other applicant seeking a variance from the frontage requirements for multi-family dwellings.

Third, the record supports the board's finding that the variance would alter the essential nature of the neighborhood. Although there was some conflict as to what area constituted the Duncans' neighborhood, it is clear that the properties immediately surrounding the Duncans' property consist mainly of one- and two-family dwellings. Adjoining property owners testified before the board in this case and in several hearings on previous variance applications that had been filed by the Duncans.[2] These adjoining property owners uniformly opposed the requested variances on the grounds that their properties would be detrimentally affected by the proximity of the proposed multi-family dwellings to their own dwellings.

Fourth, as discussed above, the Duncans' predicament could have been obviated through the construction of duplexes rather than multi-family dwellings. The construction of duplexes on the Duncans' lot would not

---

[2] See footnote 1, *supra.*

have required a variance from the applicable frontage requirements in the village zoning ordinances.

Based on all the foregoing, it is apparent that the Duncans failed to demonstrate practical difficulties in the use of their property. Although "neighborhood considerations are not as strong" in this case as they would be in an application for a use variance, the Duncans have not offered evidence to show that the "spirit" of the zoning ordinance in question is other than to allow multi-family dwellings only on the few, select lots that conform to frontage requirements. Additionally, the Duncans were not deprived of the beneficial use of their lot. They were prevented only from using their lot in a manner that would provide them with the *greatest possible* benefit.

Substantial justice requires that the interests of the community, neighborhood and adjoining property owners be given due consideration in this case. The record reveals that the interests of these groups would not be served by approval of the requested variance; and, denial of the variance did not deprive the Duncans of a reasonable return or beneficial use of their property.[3] A preponderance of reliable, probative and substantial evidence supports the board's denial of the requested variance. The judgment of the court of appeals must therefore be reversed.

*Judgment reversed.*

CELEBREZZE, C.J., HOLMES and DOUGLAS, JJ., concur.

LOCHER and WRIGHT, JJ., concur in judgment only.

C. BROWN, J., dissents.

CLIFFORD F. BROWN, J., dissenting. Although I agree that the appropriate standard for determining area variances is "practical difficulty," as we held in *Kisil* v. *Sandusky* (1984), 12 Ohio St. 3d 30, I must dissent from the result reached in the case at bar.

Middlefield Ordinance 1133.06, the basis upon which the Duncans' application for an area variance was denied, requires by its terms a proof of "unnecessary hardship" as a precondition to the grant of a variance. The court of appeals correctly held that as to "area" variances, the "unnecessary hardship" standard was impermissibly used. Rather, as this court stated in *Kisil, supra,* at 35, "the standard for granting a variance which relates solely to area requirements should be a lesser standard than

---

[3] Today's decision leaves intact the board's reaffirmation of the April 1980 variance that conditionally authorized construction of a four-unit addition to the existing dwelling. See footnote 1, *supra,* and accompanying text. The time for proceeding with the construction authorized by the April 1980 variance will begin to run from the date of today's decision.

that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship. It is sufficient the application show practical difficulties."

However, I cannot support the majority's position that the Duncans "did not suffer 'practical difficulties' as a result of the restriction," that "construction of an eight-unit dwelling on the Duncans' lot would 'alter the essential nature of the neighborhood,' " and that the record reveals "that community interests outweigh the competing interests of the Duncans in this case."

Although the fulcrum of this court's decision is a newly announced series of some seven factors to be weighed, in my view a careful consideration of those factors supports the Duncans' application. The sole testimony offered in support of the resolution denying the application belies the basis for its denial. As to the effect on the "essential character of the neighborhood," zoning board of appeals chairman Dave Adams stated that although there were "minute differences in the footage on the properties" and there were "very few properties in that neighborhood that are wide enough to have multi-family dwellings," he conceded "[t]here are instances where there are multi-family dwellings," just "not to the quantity" that the Duncans sought to construct.

Adams also testified to his opinion that the proposed construction would be "detrimental to public welfare," thus failing to satisfy another ordinance criterion. On that issue, Adams spoke of his concern that the windows in the proposed dwelling would face windows of existing structures, and "[d]epending upon the nature of those persons renting those properties, being at the back of those houses, I just felt that it really wasn't good for the neighborhood * * *." Of course, the "nature" of the potential tenants is an impermissible basis upon which to determine requests for area variances. Thus, the flimsy community interests expressed are outweighed by the competing interests of the Duncans. The majority's speculation that the Duncans could have "received a reasonable return" either by construction of additional duplexes or of a four-unit dwelling enjoys no evidentiary support.

The principle of our enlightened, 1984 zoning decision in *Kisil,* by which we put life into the strict letter of zoning law provisions relating to area variances, has not been overruled by our decision today. It is still good law, as the majority clearly notes. However, in my view, the court of appeals carefully applied *Kisil,* and in reaching its result, correctly held that "[a]pplying the requirement of an unnecessary hardship finding to a request for an area variance constitutes error since unnecessary hardship is not the proper standard in ruling on 'area' variance requests."

In essence, the application of the majority's seven-factor practical difficulties test to the Duncans' application compels a conclusion based on reasonableness and justice, the bottom line in any case, that the court of appeals be affirmed and that appellees be granted the slight area variance

that they seek. Indeed, the majority's application of those seven factors against appellees on this case reveals that the practical difficulties test has been rendered so spongy and flexible as to validate any arbitrary and capricious restriction on use of property that may be desired.

Accordingly, I would affirm the judgment of the court of appeals.