SALOTTO, Appellant,

v.

WICKLIFFE BOARD OF ZONING APPEALS et al., Appellees.

[Cite as *Salotto v. Wickliffe Bd. of Zoning Appeals*,
193 Ohio App.3d 525, 2011-Ohio-1715.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2010–L–049.

Decided April 8, 2011.

526

Paul H. Hentemann, for appellant.

William C. Gargiulo, Wickliffe Law Director, for appellee.

THOMAS R. WRIGHT, Judge.

{¶ 1} This is an accelerated-calendar appeal, taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Vittorio Salotto, seeks the reversal of the trial court's determination to uphold the denial of an area variance regarding certain residential property. Essentially, appellant maintains that the trial court misapplied the governing standard for an area variance to the specific facts of this case.

{¶ 2} The subject real property is located on East 294th Street in Wickliffe, Ohio, and was bought by appellant in 1999. At the time of the purchase, the land contained only one building, a single-family residence. In addition, the dimensions of the lot were 75 feet by 100 feet.

{¶ 3} Subsequent to the initial construction of the residence, the zoning provisions of the Wickliffe Codified Ordinances were amended to place the property into an R1–50 residential district. Pursuant to the new provisions, a lot in an R1–50 residential district had to have minimum dimensions of 50 feet by 120 feet. Since the property in question was only 100 feet deep, it was considered a legal nonconforming lot. Furthermore, the new provisions indicated that only one single-family dwelling could be maintained on a lot in such a district.

{¶ 4} At some point after his purchase of the property, appellant built a barn/garage structure that was located cater-cornered from the existing residence. At first, appellant used the second structure to store certain equipment. However, once he had retired and had no further need for the storage area, he chose to make renovations to the structure and modify it into a separate rental residence. In doing so, appellant did not obtain any of the required permits from the city of Wickliffe.

{¶ 5} After the renovations had been completed, appellant attempted to give the modified second structure a distinct address and then leased the premises to a tenant. Within a relatively short period after the tenant had moved in, though, appellant received a notice of violation from the Wickliffe building commissioner. This notice stated that appellant's actions in renovating the second structure had resulted in three violations of the Wickliffe Codified Ordinances, including the statutory requirement that a lot in an R1–50 residential district could contain only one single-family dwelling.

{¶ 6} In response to the notice of violation, appellant submitted two requests for variances with appellee, the Wickliffe Board of Zoning Appeals. In his first request, he sought a variance from the requirement that the width or frontage of a lot had to be at least 50 feet. In this regard, appellant asked to be allowed to maintain the modified second structure on a new lot that would be only 39.4 feet

in width. In his second request, he sought a variance under which he would be permitted to split his property into two lots.

{¶ 7} Even though appellant's second request was made at the express behest of the building commissioner, the board of zoning appeals ultimately chose to proceed solely on the first request. The public hearing on that request was held on October 22, 2009. At the start of the proceeding, the four members of the board asked the building commissioner a series of questions concerning the underlying situation. The majority of the questions focused upon the fact that although appellant's written request had referred to only the "width" requirement for the new lot, other variances would have to be allowed before the second structure could be used as a residence. For example, it was noted that a variance from the "total land/area" requirement, i.e., 6,000 square feet, would be needed.

{¶ 8} In the second portion of the hearing, individuals from the audience were permitted to make statements before the board. As part of his presentation, counsel for appellant emphasized that the renovation of the second structure had vastly improved the appearance of the surrounding neighborhood and that the tax value of the property had increased. Counsel also indicated that appellant did not try to obtain the required permits, because he was "from the old school." In addition, three members of the local community, including appellant's daughter, gave statements in support of allowing him to use the second structure as a single-family dwelling.

{¶ 9} At the conclusion of the public meeting, the board of zoning appeals voted unanimously to deny appellant's variance request. As the grounds for the decision, the members of the board again noted that appellant would technically need multiple variances to comply with the zoning code, and the percentage of deviation for many of those variances would be substantial. The board also noted that if appellant was permitted to establish the second lot, the width, or frontage, of the existing lot would be less than the 50–feet minimum. Approximately ten days after the date of the hearing, the board of zoning appeals issued its written determination denying the variance.

{¶ 10} Appellant immediately pursued an administrative appeal before the court of common pleas under R.C. Chapter 2506. In that appeal, appellant named both the city of Wickliffe and the board of zoning appeals as appellees. Once the underlying record of the board proceedings was filed at the trial level, each side submitted a brief on the final merits. No new evidence was heard by the trial court. In his brief, appellant asserted that the width or frontage variance should have been granted because the facts before the board had been sufficient to demonstrate that without the variance, he would experience practical difficulties in using his property. In response, appellees contended that (1)

appellant was seeking a use variance, not an area variance, and (2) he was not entitled to a use variance because he could not establish that the denial of the variance would result in an unnecessary hardship.

{¶ 11} Upon reviewing the board record and the respective briefs, the trial court rendered its judgment upholding the ruling of the board of zoning appeals. In the first part of its analysis, the trial court rejected appellees' contention and expressly found that appellant was requesting an area variance. Despite this, the court then concluded that appellant had failed to satisfy the standard for showing the existence of a practical difficulty. Specifically, the trial court held that of the seven criteria under the governing standard, the evidence before the board had supported a finding against appellant as to four of the prongs. In light of this, the court ultimately found that the ruling of the board of zoning appeals had been supported by a preponderance of reliable, probative, and substantial evidence.

{¶ 12} In now contesting the merits of the trial court's final decision, appellant has assigned the following as error:

{¶ 13} "The trial court erred as a matter of law in affirming the conclusion of the city of Wickliffe Board of Zoning Appeals that the plaintiff-appellant, Vittorio Salotto, had failed to establish 'practical difficulties.'"

{¶ 14} At the outset of our legal analysis, we note that we agree with the trial court's characterization of the nature of the relief that appellant sought in the underlying proceeding. As a general proposition, area variances involve requests to deviate from yard, setback, and height regulations. *Miller v. Willowick,* 11th Dist. No. 2006–L–148, 2007-Ohio-465, 2007 WL 314677, at ¶ 24. In the instant matter, appellant basically asked that he be allowed to create a second lot that would only be 39.4 feet wide, instead of the codified minimum of 50 feet. Thus, since the resulting lot would have a smaller-than-the-minimum yard, appellant's variance request obviously pertained to an issue of area as compared to a question of use.

{¶ 15} As both sides in this appeal correctly note, it is well settled under Ohio law that when a property owner seeks an area variance, it must be determined whether the refusal to grant the request will cause practical difficulties in the subsequent use of the land. Although the "practical difficulties" standard was originally recognized in *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 12 OBR 26, 465 N.E.2d 848, the Supreme Court of Ohio did not fully discuss the application of the standard until its seminal decision in *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692. In initially delineating a general description of the standard, the *Duncan* court stated:

{¶ 16} "In adopting the lesser, practical difficulties standard for area variances, we relied, in part, upon the analysis of the New York Court of Appeals in *Matter*

*of Hoffman v. Harris* (1966), 17 N.Y.2d 138, 269 N.Y.S.2d 119, 216 N.E.2d 326. In *Harris,* the court effectively determined that in reviewing an application for an area variance, where 'neighborhood considerations are not as strong as in a use variance,' id. at 144, 269 N.Y.S.2d 119, 216 N.E.2d 326, the 'spirit' rather than the 'strict letter' of the zoning ordinance should be observed so that 'substantial justice [is] done,' id. at 147, 269 N.Y.S.2d 119, 216 N.E.2d 326. In observing the spirit of an ordinance and attempting to do substantial justice, a zoning board of appeals or a reviewing court necessarily must weigh the competing interests of the property owner and the community. When an area variance is sought, therefore, the property owner is required to show that the application of an area zoning requirement to his property is inequitable." Id. at 86.

{¶ 17} Besides stating the basic philosophy underlying the standard, the *Duncan* court also provided a nonexclusive list of factors that a board of zoning appeals or a reviewing court should consider and weigh in determining if practical difficulties exist in a particular case:

{¶ 18} "(1) [W]hether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantively altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." Id. at the syllabus.

{¶ 19} In applying the *Duncan* factors in subsequent cases, this court has noted that no specific factor should be deemed dispositive or automatically entitled to greater weight. *Kuhns v. Kent,* 11th Dist. No. 2010–P–0002, 2010-Ohio-5056, 2010 WL 4054446, at ¶ 16. We have further indicated that the factors should not be applied in a mathematical fashion. Id.

{¶ 20} In the instant case, the trial court concluded that the record of the board proceedings contained some evidence that would support a finding in appellant's favor as to the third, fourth, and sixth *Duncan* factors. However, regarding the remaining four factors, the trial court held that appellant had been unable to satisfy those criteria. That is, the court expressly found that (1) even without the variance, the subject land would still have a beneficial use, (2) appellant's proposed deviations from the applicable area requirements would be

substantial, (3) there was no evidence indicating that appellant had been unaware at the time of the renovation that he would need to comply with the codified area requirements, and (4) the requested variance would violate the spirit and intent of the city's zoning regulations for a dwelling in an R1–50 residential district.

{¶ 21} In now maintaining that the trial court's judgment was not supported by the evidence presented to the board of zoning appeals, appellant has challenged only the second of the foregoing four findings. Specifically, he submits that notwithstanding the "arithmetical findings" of the board, the exact variance he sought for the width of the new lot was not substantial. In regard to this particular factor, it should be noted that the trial court's analysis contained the following paragraph:

{¶ 22} "The required variances for the split lot are substantial and numerous, not insignificant and few. Variances range from 41% for total area, 30% for lot frontage and 90% for rear set back. Also, the remaining lot which already had a 20 foot or 17% deficit in lot depth is left with an additional frontage deficit of six feet or 12% and an area deficit of 1600 feet or 27%."

{¶ 23} In his argument before this court, appellant focuses solely upon the new width of the second lot. Nevertheless, before the board of zoning appeals, his counsel readily admitted that in light of the fact that the subject property would basically be split into two lots, he would need multiple variances as to both parts of the land. Moreover, this court emphasizes that despite appellant's challenge to the trial court's finding of substantiality, he has not questioned any of the court's percentage calculations.

{¶ 24} In considering the second of the seven *Duncan* factors in previous zoning appeals, this court has indicated that a 25 percent deviation, or higher, must be deemed substantial in nature. See *Roberts v. Lordstown* (July 10, 1998), 11th Dist. No. 97–T–0149, at *12–14, 1998 WL 553625. In the present matter, five of the six deviations cited by the trial court were greater than 25 percent. Under such circumstances, it cannot be disputed that the deviations sought by appellant under his variance request were very substantial.

{¶ 25} Although appellant has chosen not to directly contest the finding of the trial court as to factors one, five, and seven, he has raised two other primary arguments for consideration. First, he contends that a finding of practical difficulties could have been predicated solely upon the fact that unless a variance is granted, it will be necessary for him to "gut" the inside of the second structure. However, in raising this point, he has not tried to refute the trial court's separate finding that prior to starting this specific project, he had owned and renovated multiple other properties throughout the city of Wickliffe. In light of this fact, the trial court could logically presume that appellant was generally aware that he

could not go forward with a project without complying with all applicable zoning regulations.

{¶ 26} In reviewing a similar situation in which the property owner did not request the area variance until after the new construction was completed, we have held that the owner's ignorance of the controlling area regulations is not a factor that would weigh in favor of a finding of practical difficulties. *Roberts* at *14. Therefore, regardless of whether appellant has already spent considerable funds and improved the value of his property, he cannot cite his own failure to follow the necessary procedure as a justification for the area variance.

{¶ 27} In his next argument, appellant submits that it "should be remembered that the subject property predated the R1–50 Residential District zoning which now requires a minimum lot size of 50 [feet] × 120 [feet]." In regard to this point, we note that the mere fact that the property was a legal nonconforming lot as to the minimum-depth requirement did not entitle appellant to alter other aspects of his land, such as its width and total size, that were in compliance with the requirements for an R1–50 residential lot as they were originally enacted. To this extent, the legally nonconforming nature of the property had no bearing upon the application of the "practical difficulties" standard to the facts of this case.

{¶ 28} Finally, appellant has presented arguments concerning the three *Duncan* factors that were cited by the trial court as favoring him. As to these arguments, a review of the record of the board proceedings confirms the trial court's findings on those points. That is, the evidence before the board did show that (1) the granting of the variance request would not substantially alter the character of the surrounding neighborhood and would not harm the separate interests of the adjoining property owners, (2) the ability of the city to deliver governmental services would not be adversely affected, and (3) there did not appear to be any other remedy that could be invoked to resolve the underlying dispute as to the size of the two resulting lots.

{¶ 29} Nevertheless, our review of the board proceedings establishes that it is equally true that the evidence also supported the trial court's findings on the remaining four *Duncan* factors. As was discussed above, it was proven that the extent of many of the variances would be substantial. Second, since appellant would still be able to use the original home as a residence, the denial of the variance would not deprive him of all beneficial use of the property. Third, the evidence supported the inference that he was generally aware of the application of the zoning regulations and could have avoided the instant problem by checking those regulations prior to beginning the renovation. Fourth, given that appellant would have needed a variance regarding the vast majority of area requirements

for a lot in an R1–50 residential district, the spirit and intent of the governing regulations would not be observed by allowing him to split the subject property.

{¶ 30} In light of the fact that each of the trial court's factual findings on the seven *Duncan* factors was supported by a preponderance of substantial, reliable, and probative evidence in the record, the controlling issue in this appeal is whether the trial court erred in concluding that the four factors against appellant were entitled to greater weight than the three factors in his favor. In reviewing this type of decision under R.C. 2506.04, an appellate court cannot engage in any reweighing of the evidence; instead, the scope of our consideration is limited to determining whether the trial court abused its discretion. *Miller*, 2007-Ohio-465, 2007 WL 314677, at ¶ 23. Under the precedent of this court, the term "abuse of discretion" is one of art, connoting judgment exercised by a court that does not comport with reason or the record. *Caudill v. Thomas*, 11th Dist. No. 2009–P–0087, 2011-Ohio-524, 2011 WL 379123, at ¶ 17, citing *Gaul v. Gaul*, 11th Dist. No. 2009–A–0011, 2010-Ohio-2156, 2010 WL 1948314, at ¶ 24.

{¶ 31} Upon considering the records of the proceedings at the administrative and trial levels, this court holds that the trial court did not abuse its discretion in weighing the seven *Duncan* factors for determining whether any practical difficulties existed under the facts of the instant action. Notwithstanding the fact that appellant's renovations to the barn/garage had resulted in a soundly constructed residence that was consistent with the other structures in the neighborhood, a reasonable person could still conclude that the extent of the deviations from the applicable "area" regulations were so great that the spirit and intent of the zoning laws were basically being ignored. Moreover, the fact that appellant had invested both time and money in completing the renovation was readily outweighed by his failure to follow the proper procedure and obtain prior approval of the entire project.

{¶ 32} Because the trial court did not err in holding that appellant had not satisfied the "practical difficulties" standard for an area variance, the sole assignment of error in this appeal lacks merit. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

GRENDELL and TRAPP, JJ., concur.