[Cite as *ProTerra, Inc. v. Cleveland Bd. of Zoning Appeals*, 2020-Ohio-6739.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

PROTERRA, INC.,                              :

    Plaintiff-Appellant,          :

                                 No. 109278

    v.                                        :

CITY OF CLEVELAND BOARD OF
ZONING APPEALS,                              :

    Defendant-Appellee.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED**: December 17, 2020

---

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-908562

---

### *Appearances:*

Roetzel & Andress, L.P.A., and Diana M. Feitl, *for appellant.*

Barbara A. Langhenry, Cleveland Director of Law, and Carolyn M. Downey, Assistant Director of Law, *for appellee.*

MARY J. BOYLE, P.J.:

{¶ 1} Plaintiff-appellant, ProTerra, Inc. ("ProTerra"), appeals the trial court's judgment affirming the decision of the Cleveland Board of Zoning Appeals

("BZA") to deny ProTerra's requests for three area variances. ProTerra raises five assignments of error for our review:

> 1. The [trial court's] decision to affirm [BZA's] denial of ProTerra's variances requests is unsupported by the preponderance of the evidence as a matter of law because the [t]rial [c]ourt affirmed a BZA decision that applied the wrong legal standard for an area variance.
>
> 2. The [t]rial [c]ourt's decision to affirm the BZA's denial of ProTerra's variance requests is unsupported by the preponderance of the evidence as a matter of law because the [t]rial [c]ourt affirmed the BZA decision that failed to weigh the factors outlined in *Duncan v. Middlefield*, 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692 (1986) and Cleveland Codified Ordinance 329.03.
>
> 3. The [t]rial [c]ourt's failure to reverse the BZA's decision regarding ProTerra's parking space variance request and remand the cause to the BZA with instructions to enter an order granting the variance is unsupported by the preponderance of the evidence as a matter of law.
>
> 4. The [t]rial [c]ourt's failure to reverse the order of the BZA's decision regarding ProTerra's pavement variance request and remand the cause to the BZA with instructions to enter an order granting the variance is unsupported by the preponderance of the evidence as a matter of law.
>
> 5. The [t]rial [c]ourt's failure to reverse the order of the BZA's decision regarding ProTerra's fencing variance request and remand the cause to the BZA with instructions to enter an order granting the variance is unsupported by the preponderance of the evidence as a matter of law.

{¶ 2} Finding merit to ProTerra's first two assignments of error, we reverse the trial court's judgment and remand to the trial court.

## I. Procedural History and Factual Background

{¶ 3} This appeal stems from ProTerra's latest certificate-of-occupancy application for a temporary storage, material handling, and screening operation at 691 East 165 Street, in Cleveland's Collinwood neighborhood zoned as a General Industry District. ProTerra first applied for a certificate of occupancy in November

2016 and has resubmitted its application with revised site plans four times in response to notices of nonconformance with the zoning code. ProTerra most recently submitted revised site plans in April 2018.

{¶ 4} In May 2018, the Cleveland Department of Building and Housing Zoning Administrator sent ProTerra a notice of nonconformance that denied ProTerra's certificate-of-occupancy application due to three zoning code violations: (1) a parking lot that is too small and not paved, in violation of Cleveland Codified Ordinances ("C.C.O.") 349.04(j); (2) asphalt grindings surfacing and unpaved roadways, in violation of C.C.O. 349.07(a); and (3) open yard storage of used construction material within 500 feet of a residential district without a seven-foot solid wall or fence, in violation of C.C.O. 345.04(a)(3). ProTerra sought variances from the BZA for all three violations.

{¶ 5} On November 19, 2018, the BZA held a public hearing on ProTerra's variance requests. Present at the hearing were the BZA members, BZA's counsel, a zoning administrator, ProTerra's counsel, ProTerra's owner, Councilman Michael Polensek of Ward 8, a representative from the Greater Collinwood Development Corporation, one of ProTerra's neighbors, and a representative from the Cleveland City Planning office.

{¶ 6} ProTerra's counsel said that ProTerra purchased the vacant lot to open a facility to store, process, and sell "virgin soil and materials from the yard." She explained that ProTerra started to operate without a certificate of occupancy. In 2015, misdemeanor charges were brought against ProTerra in the Cleveland

Municipal Court, Housing Division, for operating without a certificate of occupancy. In July 2016, ProTerra's vice president pleaded no contest to the charges on Proterra's behalf. ProTerra's counsel explained that the judge "wants us to get our certificate of occupancy." She stated that ProTerra was not currently operating and has been "taking a number of steps" to make sure that its operation is "ready to go."

{¶ 7} Regarding the parking variance request, ProTerra's counsel stated that the zoning code requires 43,134 square feet of parking but that ProTerra did not need such a large parking lot because it has only three employees and is not open to the public. ProTerra proposed a 12,000-square-foot permanent parking lot and a 43,000-square-foot "land bank" that ProTerra could use for other operations (such as storing materials) but also for parking if necessary. ProTerra's counsel explained that without the variance, ProTerra would lose land that it needs to store its material. She stated the variance request is minimal, the fire department had approved a similar parking plan that ProTerra had previously submitted, and the variance would not upset any public services because the site has no trash removal or utilities other than electricity for a small structure. In support of the variance request, ProTerra submitted a letter from its engineers who proposed the land-bank idea.

{¶ 8} With respect to the paving variance, ProTerra's counsel proposed that ProTerra be permitted to use asphalt grindings on its parking lot and driveway instead of asphalt or concrete pavement that the zoning code requires. She explained that compacted asphalt grindings create "a dust freeze smooth surface"

that is better for ProTerra's trucks and machinery, and the asphalt grindings would better withstand wear and tear than fully paved asphalt or concrete. She stated the asphalt grindings would also allow ProTerra to shift its roadways as its piles of materials shift. ProTerra's owner added that asphalt grindings help absorb water in the road to prevent "a muddy mess." In support of the variance request, ProTerra submitted a letter from its engineers that says asphalt grindings are appropriate for this type of site.

{¶ 9} Regarding the fencing requirement, ProTerra's counsel explained that ProTerra already has a seven-foot, chain-link fence around most of the site as well as ten-to-fifteen-feet "screening mounds" around the entire site behind the fence. She requested that the existing mounds and fence satisfy the zoning code if ProTerra were to add mesh to the fence.

{¶ 10} Councilman Polensek urged the BZA to deny all three variance requests. He described ProTerra as "an illegal operation" with "a mighty Matterhorn" of a mound that is causing water to flow into the parking lot of the neighboring school. He explained that the mound at one point was taller "than the tower at Collinwood High School, which is the highest point in the neighborhood." He submitted pictures of the mound and cattails growing in the neighboring school's parking lot because of all the water. Councilman Polensek also said that ProTerra's operation has "totally annihilated" East 165 Street and tracks mud "not only down my entire Ward but into Ward 10." He explained that when the weather is dry, the wind blows dust and debris from ProTerra's site all over the neighborhood, covering

the buildings and cars. He receives the calls "when the people in the neighborhood get the dust storms, the dust clouds around there." He stated that he opposes anything ProTerra requests because he is "fed up with them" and the mud.

{¶ 11} A representative of the Greater Collinwood Development Corporation also described ProTerra as "an illegal operation" and expressed concerns at what ProTerra would do "if we make it legal." He said that he "constantly" receives calls from people in the neighborhood about the dust, dirt, and mud. He explained that the "neighborhood is fed up." He speculated that if ProTerra had a cement parking lot, some of the dirt that ProTerra tracks through the city on its trucks would remain on its own property. He concluded that the Development Corporation "is totally against this."

{¶ 12} One of ProTerra's neighbors said that the sewer on ProTerra's property is clogged, and the water drains off onto his property and the other neighboring properties, including the school. He complained that his sewer bill is high and that dirt spills onto ProTerra's neighbors' property. "There is no way to stop it other than to remove the dirt. I've never seen anything like this. This is horrible." He explained that he was "furious."

{¶ 13} A representative from the Cleveland City Planning office stated that he did not approve ProTerra's variance requests because the site is too close to a residential district, the mounds are too high, and the chain-link fence is not properly screening the debris.

{¶ 14} In response to the comments from the community members, ProTerra's counsel reminded the BZA that ProTerra had submitted letters of support from two neighbors. She further asserted that East 165 Street was "in disrepair before we moved in."

{¶ 15} At the end of the hearing, the BZA voted to deny all three variance requests. On November 26, 2018, the BZA adopted and approved its decision in a resolution.

{¶ 16} On December 18, 2018, ProTerra appealed the BZA's resolution to the Cuyahoga County Court of Common Pleas. On November 7, 2019, the trial court affirmed the BZA's resolution, finding that it was "supported by a preponderance of reliable, probative and substantial evidence." It assessed court costs to ProTerra.

{¶ 17} It is from this judgment that ProTerra timely appeals.

## II. Limited Scope of Appellate Review

{¶ 18} Common pleas courts and appellate courts apply different standards of review to administrative appeals brought pursuant to R.C. Chapter 2506. R.C. 2506.04 provides that if a party appeals an administrative decision, the common pleas court "may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." However, R.C. 2506.04 provides that the common pleas court judgment may be appealed to an appellate court only "on questions of law."

{¶ 19} The Ohio Supreme Court has explained the distinction:

> In an R.C. Chapter 2506 administrative appeal of a decision of the board of zoning appeals to the common pleas court, the court, pursuant to R.C. 2506.04, may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative and substantial evidence. *An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.*

(Emphasis sic.) *Cleveland Clinic Found. v. Bd. of Zoning Appeals of the City of Cleveland*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 23, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). Whether the common pleas court abused its discretion is "[w]ithin the ambit of 'questions of law'" in R.C. 2506.04 administrative appeals. *Kisil* at fn. 4.

{¶ 20} With our limited scope of review, we cannot perform a de novo review of the record, as ProTerra asks us to do in its third, fourth, and fifth assignments of error, to determine whether ProTerra is entitled to the area variances. *See Kisil*, 12 Ohio St.3d 30, at fn. 4, 465 N.E.2d 848 (R.C. 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court."); *Kurtock v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, ¶ 8 ("Unlike the court of common pleas, we do not have the same extensive power to weigh the preponderance of substantial, reliable, and probative evidence that is granted to the lower courts. We can only

review the lower court for errors of law."); *Kohrman v. Cincinnati Zoning Bd. of Appeals*, 165 Ohio App.3d 401, 2005-Ohio-5965, 846 N.E.2d 890, ¶ 12 (1st Dist.) ("[W]e may not independently examine the evidence in the record to determine if the trial court was 'correct for the wrong reasons.'"); *Vang v. Cleveland*, 8th Dist. Cuyahoga No. 104994, 2017-Ohio-4187, ¶ 9 (R.C. 2506.04 does not grant appellate courts "the same extensive power to weigh the evidence as is granted to the trial court."). Accordingly, we overrule ProTerra's third, fourth, and fifth assignments of error.

## III. The "Practical Difficulty" Standard and *Duncan* Factors

{¶ 21} In its first and second assignments of error, ProTerra argues that the trial court's judgment affirming the BZA's decision is unsupported by a preponderance of the evidence as a matter of law because the BZA (1) applied the "unnecessary hardship" standard for use variances instead of the "practical difficulties" standard for area variances, and (2) failed to consider the conditions in C.C.O. 329.03(b) and the "practical difficulties" factors set forth in *Duncan v. Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692 (1986). Appellee, the city of Cleveland ("Cleveland"), concedes that ProTerra sought area variances and that the BZA resolution "erroneously used the term unnecessary hardship," but Cleveland maintains that the error is not "a fatal legal defect."

{¶ 22} C.C.O. 329.03(b) limits the BZA's authority to grant a variance to specific cases where the following conditions are shown:

> (1) The practical difficulty or unnecessary hardship inheres in and is peculiar to the premises sought to be built upon or used because of

physical size, shape, or other characteristics of the premises * * * which differentiate it from other premises in the same district and create a difficulty or hardship caused by a strict application of the provisions of this Zoning Code not generally shared by other land or buildings in the same district;

(2) Refusal of the variance appealed for will deprive the owner of substantial property rights; and

(3) Granting of the variance appealed for will not be contrary to the purpose and intent of this Zoning Code.

The burden to prove the three conditions set forth in C.C.O. 329.03(b) is on the party seeking the variance, and the failure to establish all three conditions require the board to deny the requested variance. *See Consol. Mgt., Inc. v. Cleveland*, 6 Ohio St.3d 238, 242, 452 N.E.2d 1287 (1983); *Cleveland v. Patrick Realty*, 8th Dist. Cuyahoga No. 90349, 2008-Ohio-4243, ¶ 24.

{¶ 23} The BZA is authorized to grant both "use" and "area" variances. *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 307, 421 N.E.2d 530 (1981). "A use variance permits land uses for purposes other than those permitted in the district as prescribed in the relevant regulation," such as allowing "a commercial use in a residential district." *Id.* at 306-307. "Area variances do not involve uses, but rather structural or lot restrictions," such as "relaxation of setback lines or height restrictions." *Id.* at 307.

{¶ 24} The legal standards for area and use variances are different. To obtain a use variance, the applicant must show that the zoning restriction would cause an "unnecessary hardship" not shared by other land or buildings in the district. *Kisil*, 12 Ohio St.3d 30, 465 N.E.2d 848, at syllabus. However, "[a]n application for an

area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties." *Id.* Area variances have a lower standard because for an area variance, "'there is no change in the character of the zoned district[,] and the neighborhood considerations are not as strong as in a use variance.'" *Id.*, quoting *Matter of Hoffman v. Harris*, 17 N.Y.2d 138, 144, 269 N.Y. Supp.2d 119, 216 N.E.2d 362 (1966). The parties agree that ProTerra requested area variances.

{¶ 25} The Ohio Supreme Court explained the "practical difficulties" standard for area variances in *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692. It stated:

> While existing definitions of "practical difficulties" are often nebulous, it can safely be said that a property owner encounters "practical difficulties" whenever an area zoning requirement (e.g., frontage, setback, height) unreasonably deprives him of a permitted use of his property. The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable. The practical difficulties standard differs from the unnecessary hardship standard normally applied in use variance cases, because no single factor controls in a determination of practical difficulties. A property owner is not denied the opportunity to establish practical difficulties, for example, simply because he purchased the property with knowledge of the zoning restrictions. *Kisil, supra*, at 33; cf. *Consolidated Mgmt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 6 Ohio B. 307, 452 N.E.2d 1287.

*Duncan* at 86.

{¶ 26} In *Duncan*, the Ohio Supreme Court set forth the following, nonexclusive list of factors to be considered and weighed when determining whether a property owner has encountered practical difficulties in the use of property:

> (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the

essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; [and] (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Id.* at syllabus. The BZA need not consider every *Duncan* factor. *Phillips v. Westlake Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 92051, 2009-Ohio-2489, ¶ 58. "The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." *Duncan* at 86.

{¶ 27} Here, the BZA applied the incorrect legal standard to ProTerra's area variance requests. At the public hearing, BZA's counsel did describe the correct "practical difficulty" standard:

The appellant is requesting area variances from the off-street parking, distance, and screening regulations of the zoning code. To obtain the area variances, the appellant must prove that denying the request will create a practical difficulty not generally shared by other land or buildings in the same district, [that] it will deprive the appellant of substantial property rights, and that granting the variances will not be contrary to the purpose and intent of the zoning code.

{¶ 28} However, BZA's resolution treats ProTerra's requests for area variances as requests for use variances. The resolution specifies that the BZA "finds that permission to establish use as temporary storage material handling should be refused." The resolution also applies the "unreasonable hardship" standard for use variances, instead of the "practical difficulty" standard for area variances: "WHEREAS, in being refused the appeal the owner will not suffer an unreasonable

hardship, since they are not denied any use of property not also denied other owners in that district similarly situated[.]"

{¶ 29} The testimony at the hearing also shows that the BZA based its vote to deny ProTerra's requests on how ProTerra used its property rather than the reasonableness of the variances for the parking lot, paving, and fencing:

> Chairman Johnson: The top right-hand corner picture [of the mound on ProTerra's property] (indicating), that's huge. That's not a mound. That's a mountain. I mean, I can't guess the height, but that sure in h*ll is not a mound. I'll entertain a motion.
>
> * * *
>
> Ms. Britt: Madam Chair, just given the testimony and really the evidence provided by these pictures, I mean, this dirt mound seems quite incredible. So, I'm going to go for that we deny this request for Calendar Number 18-208.

The BZA appears to have been persuaded by the community members' complaints about ProTerra's use of its property and the mess it has created for the neighborhood. But the issue before the BZA was not whether ProTerra should be allowed to operate. Instead, the BZA needed to decide whether a strict application of the zoning code related to ProTerra's parking lot, paving, and fencing would have caused ProTerra practical difficulties. The BZA did not make that determination.

{¶ 30} Although it applied the wrong standard, the BZA did make specific findings related to all three conditions in C.C.O. 329.03(b). The BZA found that ProTerra would not suffer an "unreasonable hardship," that it was "not denied any use of property," and that granting the variances "would be contrary to the purpose and intent of the Code." The BZA, however, did not make any specific findings

related to the seven "practical difficulty" factors from *Duncan*, likely because the BZA improperly switched the standards for area and use variances.

{¶ 31} Cleveland concedes that the BZA's resolution applies the incorrect legal standard but argues that the error does not warrant reversal. In support of its argument, Cleveland relies on *Kurtock*, 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, at ¶ 18, for the proposition that an explicit "finding of practical difficulty or unnecessary hardship" is not necessary if the transcript of the proceedings shows that the BZA "was aware of the requirements under the ordinance." However, in *Kurtock*, we found the opposite. In *Kurtock*, a restaurant owner requested a use variance to allow her restaurant to host live music on its patio. *Id.* at ¶ 2. The BZA heard evidence regarding unnecessary hardship, granted the variance, but did not make any explicit findings regarding the "unnecessary hardship" standard. *Id.* at ¶ 17-19. We held that even though the BZA may have considered the correct standard, absent specific findings pursuant to C.C.O. 329.03(b), the BZA "had no authority to issue the variance," and the trial court's "affirmance of the board's decision was an error of law." *Id.* at ¶ 20-21. *Kurtock* supports ProTerra's argument that regardless of what the BZA may have considered at the hearing, it must make explicit findings in its resolution.

{¶ 32} Case law from multiple districts show that trial courts do not abuse their discretion by reversing a zoning board's decision for applying the wrong legal standard. *See K. Hovnanian Oster Homes LLC v. Lorain Ohio Zoning Bd. of Appeals*, 9th Dist. Lorain No. 14CA010677, 2015-Ohio-5317, ¶ 10 (affirming the trial

court's reversal of the zoning board decision that confused the standards for use and area variances); *Perez v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 75166, 2000 Ohio App. LEXIS 80, 8-9 (Jan. 13, 2000) (holding that the trial court properly reversed the Board of Zoning Appeal's decision for applying the "unreasonable hardship" standard to the applicant's request for an area variance); *Kapcar v. Richfield Twp. Bd. of Zoning Appeals*, 9th Dist. Summit No. 19463, 1999 Ohio App. LEXIS 5412, 5 (Nov. 17, 1999) (affirming the trial court's judgment to reverse the zoning board's decision and remanding for the board to consider the evidence under the correct legal standard).

{¶ 33} A case out of the First District, *Kneseth Israel Congregation v. Amberley Bd. of Zoning Appeals*, 1st Dist. Hamilton No. C-900082, 1991 Ohio App. LEXIS 2092 (May 8, 1991), provides guidance for where, as here, a trial court affirms a zoning board's decision that applies the wrong legal standard. In *Kneseth Israel Congregation*, a synagogue sought an area variance, but the zoning board applied the "unnecessary hardship" standard and denied the variance. *Id.* at ¶ 1-2. The trial court affirmed the zoning board's decision, but the appellate court reversed and remanded the matter to the trial court because the zoning board applied the "unnecessary hardship" standard instead of the 'practical difficulties' standard. *Id.* at ¶ 3. The appellate court explained that unless the trial court found that the zoning board's "application of the wrong standard was harmless error because the evidence failed, as a matter of law, to establish 'practical difficulties,' the court should have reversed and remanded this matter to the zoning authority to apply the proper legal

standard." *Id.* The appellate court could review only questions of law, and its role was not "to now act as the zoning authority and weigh the evidence to determine whether [the synagogue] has established 'practical difficulties.'" *Id.* The court continued, "[a]s we cannot say that the evidence establishes 'practical difficulties,' or the lack thereof, as a matter of law, our course is to remand the matter to the court of common pleas." *Id.* at 4.

{¶ 34} Here, ProTerra argued to the trial court that the BZA incorrectly applied the "unnecessary hardship" standard, that the BZA failed to consider the factors from *Duncan,* 23 Ohio St.3d 83, 491 N.E.2d 692, and that the evidence presented at the hearing shows that ProTerra established practical difficulties. The trial court did not address ProTerra's argument that the BZA applied the wrong legal standard or find that its application of the "unnecessary hardship" standard was harmless error. We are unable to determine from the trial court's judgment entry whether the trial court analyzed the evidence under the "practical difficulty" standard to affirm the BZA's decision. The trial court's judgment did not include any detail into its reasoning. The trial court merely identified R.C. 2506.08 as authority for the appeal, stated that the trial court considered the parties' briefs and evidence, and found that the BZA's "decision to deny ProTerra's variance requests was supported by a preponderance of reliable, probative and substantial evidence." The trial court's judgment does not identify or analyze the evidence in the record, does not discuss any relevant testimony, and does not apply any evidence in the record to the "practical difficulties" factors articulated in *Duncan*.

{¶ 35} Although in an administrative appeal a trial court need not issue a detailed opinion or issue findings of fact and conclusions of law pursuant to Civ.R. 52, "for an appellate court to conduct a meaningful review, sufficiently detailed reasoning should be specified in the trial court's order." *Cross v. A-Best Prods. Co.*, 8th Dist. Cuyahoga No. 90388, 2009-Ohio-2039, ¶ 22. Here, absent any explanation or analysis by the trial court of the evidence in the record and whether ProTerra established practical difficulty, we cannot determine whether the trial court fulfilled its obligation under R.C. 2506.04 to review the evidence, nor can we perform our more limited appellate review. *See Vang*, 8th Dist. Cuyahoga No. 104994, 2017-Ohio-4187, at ¶ 12 (reversing the trial court's judgment affirming the zoning board's decision because the trial court's opinion lacked sufficient detail for the appellate court to determine if the trial court had abused its discretion).

{¶ 36} Because the BZA erred when it applied the wrong legal standard and failed to consider *Duncan* factors, and because the trial court affirmed the BZA's resolution without sufficient detail to allow us to review whether the trial court had analyzed the evidence under the "practical difficulty" standard, we sustain ProTerra's first and second assignments of error.

{¶ 37} Judgment reversed and remanded. Upon remand, the trial court should conduct the evidentiary analysis pursuant to C.C.O. 329.03(b) and the "practical difficulty" factors in *Duncan* to determine whether the preponderance of substantial, reliable, and probative evidence in the record supports the BZA's

decision despite the BZA's application of the wrong legal standard and failure to consider the *Duncan* factors.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
MICHELLE J. SHEEHAN, J., CONCUR