[Cite as *Lee v. Lafayette Twp. Bd. of Zoning Appeals*, 193 Ohio App.3d 795, 2011-Ohio-2086.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF MEDINA | ) | | |

LEE ET AL.,

    Appellants,

    v.

LAFAYETTE TOWNSHIP BOARD OF
ZONING APPEALS ET AL.,

    Appellees.

C.A. No.      10CA0077-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    09CIV2436

DECISION AND JOURNAL ENTRY

Dated: May 2, 2011

APPEARANCES:

J. Douglas Drushal and Andrew P. Lycans, for appellants.

Dean Holman, Medina County Prosecuting Attorney, and Tom J. Karris and David J. Folk, Assistant Prosecuting Attorneys; and Michael L. Laribee, for appellees.

WHITMORE, Judge.

{¶1}    Appellants, William and Nicole Lee, appeal from the judgment of the Medina County Court of Common Pleas in favor of appellees, the Lafayette Township board of Zoning Appeals and the Schwab family trust. This court reverses.

I

{¶2}    Elizabeth Schwab's family built a small cottage on their Chippewa Lake lot in the mid-1930s and transferred the property within their family through quit-claim deeds until it came into Schwab's possession, as trustee for the trust, in 1997. In July 1999, the cottage on the property was destroyed after a storm caused a tree to fall on it. Schwab razed the cottage instead

of rebuilding it, and the lot, which is lakeside property, has remained free of any structures since that time. After Schwab razed the cottage, there was no impediment blocking the view of the lake from the adjacent lot.

{¶3} In 2006, the Lees purchased the lot adjacent to the trust's lot and renovated their property to maximize their view of the lake. They learned in 2009, however, that Schwab was seeking to build a structure on the trust's property, the dimensions of which would interfere with their view. Specifically, Schwab sought to build a 1,032 square foot, one and one-half story house on the trust's 2,662 square foot lot. Because the proposed building plans for the house conflicted with several zoning resolutions, Schwab sought five variances. Schwab's zoning application asked the board to approve variances with respect to the following Lafayette Township Zoning Resolutions: (1) the minimum lot size, pursuant to Section 301.4-A-1, (2) the minimum setback, pursuant to Section 301.5-A, (3) the minimum east-side yard width, pursuant to Section 301.5-B, (4) the minimum west-side yard width, pursuant to Section 301.5-B, and (5) the minimum square footage for a single-family dwelling, pursuant to Section 214-A-1-2.

{¶4} The board held a public hearing on the requested variances on November 5, 2009. Schwab and the Lees spoke at the hearing, as did numerous other concerned residents of the area. At the end of the hearing, the board voted on the variances and approved them.[1] The board issued a formal decision approving all five variances on November 12, 2009.

---

[1] We note that the transcript from the board's public hearing contains a discrepancy with regard to the vote of the board members. One of the members, Lisa Takach, moved to grant all five variances at issue. Her motion was seconded, and the chair called the vote. The transcript then lists Takach as voting *against* all five variances. Because the variances were granted by a majority and Takach's vote either way does not change that fact, the discrepancy has no bearing on the board's ultimate decision. This court merely notes the discrepancy for purposes of the record.

{¶5} On December 11, 2009, the Lees filed a notice of appeal in the Medina County Court of Common Pleas, challenging the board's decision. The trust sought to intervene in the action as the owner of the property to which the variances applied, and the trial court permitted the intervention. The Lees, the board, and the trust all filed briefs in support of their positions. On June 9, 2010, the court affirmed the board's decision to allow the variances.

{¶6} The Lees now appeal from the court's judgment and raise four assignments of error for our review. For ease of analysis, we consolidate the assignments of error.

II

Assignment of Error Number One

The common pleas court erred in failing to sufficiently detail its reasoning in such a way as to allow the appellate court to conduct a meaningful review of the decision.

Assignment of Error Number Two

The common pleas court erred by failing to properly apply the practical difficulties standard.

Assignment of Error Number Three

The decision of the board and the common pleas court is not supported by the evidence in the record.

Assignment of Error Number Four

The common pleas court erred by allowing the board to "correct" the zoning resolution's "mistake" in applying rural residential zoning requirements to Chippewa Lake by way of variances.

{¶7} In the foregoing assignments of error, the Lees argue that the trial court erred by affirming the board's decision to grant the trust's requested variances. Specifically, they argue that the court erred by (1) failing to set forth any analysis in its judgment that would allow for a meaningful review on appeal, (2) adopting the board's flawed application of the practical-

difficulties test, and (3) affirming a decision that is not supported by the evidence in the record and is the result of an ad hoc response to an unworkable zoning scheme.

{¶8} Administrative appeals initiated under R.C. 2506.04 require the trial court to "consider[] the entire record before it and 'determine[] whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.' " *Summit Cty. v. Stoll*, 9th Dist. No. 23465, 2007-Ohio-2887, at ¶ 9, quoting *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147. Based on its review, the trial court may "affirm, reverse, vacate, or modify the order." R.C. 2506.04. The trial court's judgment "may be appealed by any party on questions of law." Id. Whether the trial court abused its discretion is "[w]ithin the ambit of 'questions of law' for appellate court review." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, fn. 4. An appellate court's review in such an instance, however, "does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Henley*, at 147; *Kisil* at 34, fn. 4. Rather, we must affirm the trial court's decision if such evidence exists in the record. *Summit Cty. v. Stoll*, 9th Dist. No. 24681, 2009-Ohio-6615, at ¶ 6, citing *Kisil* at 34. "Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Henley* at 147.

{¶9} "The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use *.*.*; it is sufficient that the application show practical difficulties." *Kisil* at syllabus.

> The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use

of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.*, water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, syllabus. "[N]o single factor controls in a determination of practical difficulties." Id. at 86. "The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." Id.

{¶10} While the trust, through Schwab, sought five separate variances in this case, they all stem from Schwab's desire to build one structure, a single-family dwelling. Due to the diminutive size of the trust's lot, the placement of virtually any structure on it presents a difficulty in terms of zoning. For purposes of context, we outline the size of the variances sought by the trust. To conform to Zoning Resolution Section 301.4-A-1's requirement that all lots containing a single-family dwelling be a minimum of 87,120 square feet (two acres), the trust sought a variance of 84,458 feet to build a dwelling on its 2,662 square foot lot. To conform to Section 301.5-A's minimum setback requirement of 80 feet, the trust sought a 64- foot variance. To conform to Section 301.5-B's requirement that side yards have a minimum width of 15 feet, the trust sought a seven-foot variance for the east side of its property and an eight-foot variance for the west side of its property. Finally, to conform to Section 214-A-1-2's requirement that single-family dwellings without basements contain a minimum of 1,400 square feet, the trust sought a 368 foot variance for its proposed 1,032 square foot dwelling.

{¶11}  After a careful review of the record, this court concludes that the proper remedy in this matter is a remand to the trial court.  The record here does not support the conclusion that the trial court considered the board's interpretation and application of Lafayette Township Zoning Resolution Section 706.  Section 706 reads as follows:

> In any district in which single family dwellings are permitted, a single family dwelling *.*.* may be erected on any legal lot of record at the effective date of adoption or amendment of this Resolution, notwithstanding limitation imposed by other provisions of this Resolution, provided all such lots are approved by the Medina County Health Department for on-site sewer and water facilities, if applicable.  This provision shall apply even though such lot fails to meet the requirements for area or width, or both, that are generally applicable in the district provided that yard dimensions and requirements other than those applying to area or width, or both, of the lot shall conform to the current regulations for the district in which such lot is located.  Variances of requirements listed in Article III of this Resolution other than lot area or lot width shall be obtained only though action of the board * * *.

Thus, Section 706 constitutes a grandfathering provision, whereby single family dwellings may be erected on lots that were "legal lot[s] of record" at the time of the zoning resolution's adoption, regardless of the fact that those lots do not meet certain requirements pertaining to area or width.  We read Section 706 as a provision that exempts eligible lots from certain area and width requirements such that a variance would be unnecessary.

{¶12}  The trial court did not refer to Section 706 in upholding the trust's variances, almost all of which requested area and width deviations.  Although Section 706 was discussed at the public hearing before the board, the result of that discussion is troubling.  At the hearing, the zoning inspector stated the following:

> [B]asically what [Section 706] is saying is [the trust's lot] is a lot of record and it's a current lot of record and technically it's a buildable lot. The fact that you can't put a house on there that you would like to put, it's still a viable lot – it's not a taking.  But [Section 706 is] saying that if they can't meet the lot requirements as far as setbacks and all those good things, then it shall be obtained only through the action of the board of

Zoning Appeals. So the board of Appeals can, if it wants to, grant variances to the side yards and setbacks so that a house can be put on it.

As further explained below, Section 706's plain language and the zoning inspector's statements about the section are less than clear.

{¶13} Lafayette Township's Zoning Resolution splits lot requirements and yard requirements into two distinct sections, Sections 301.4 and 301.5. The "lot requirement" section sets forth restrictions for minimum lot area, frontage, and width, while the "yard requirements" section sets forth restrictions for minimum setbacks, side-yard widths, and rear yard depths. The definitional section of the zoning resolution also separately defines "lot" and "yard." Even so, the "lot" definition appears to encompass "yard[s]" to some extent. See Lafayette Township Zoning Resolution, Art. XII, Definitions: Lot ("[A] lot is a recorded parcel of land of sufficient size to meet minimum zoning requirements for use, coverage, and area, and to provide such yards * * * as are herein required"). Moreover, the zoning inspector's comments at the public hearing add to the confusion. The zoning inspector commented that Section 706 applies if owners "can't meet the lot requirements as far as setbacks." According to the zoning resolution, however, setbacks are yard requirements, not lot requirements. See Lafayette Township Zoning Resolution, Section 301.5(A). It is unclear, then, whether the zoning inspector and the board consider "yard[s]" to be encompassed within the term "lots" for purposes of Section 706. Section 706's plain language also adds to the confusion.

{¶14} The full text of Section 706, as it pertains to single family dwellings, is quoted above. The portion of concern here reads as follows:

This provision shall apply even though such lot fails to meet the requirements for area or width, or both, that are generally applicable in the district *provided that yard dimensions and requirements other than those applying to area or width, or both, of the lot* shall conform to the current regulations for the district in which such lot is located.

(Emphasis added.) Initially, we note that the zoning resolution contains a provision and definition only for yard "requirements," not yard "dimensions." More important, however, it is unclear whether the emphasized portion of the text means (1) that area and width requirements, regardless of whether they are lot requirements or yard requirements, will not apply to eligible lots; or (2) that area-and-width lot requirements will not apply to eligible lots, but yard requirements will still apply and necessitate a variance. Section 706 is entitled only "Nonconforming Lots of Record," but the zoning resolution does not contain a provision for nonconforming yards. Thus, either Section 706 encompasses yard requirements in addition to lot requirements, or the zoning resolution does not exempt yard requirements in any instance.

{¶15} Because virtually all the variances here are area-and-width related, the interpretation of Section 706 is a crucial determination. It is necessary, therefore, for the trial court to consider the board's interpretation and application of Section 706 in the first instance and determine what effect it has on the variances at issue here. To the extent that the Lees argue within their second and third assignments of error that the board and the trial court did not consider Section 706, we find merit in that assertion. In light of our conclusion that this matter must be remanded for the trial court to address Section 706, we do not reach the Lees' additional arguments attacking the breadth of the trial court's analysis and the board's ultimate decision to grant the trust's variances. Those additional arguments are premature at this time.

### III

{¶16} The Lees' second and third assignments of error are sustained, in part, to the extent that they challenge the application of Lafayette Township Zoning Resolution Section 706. We do not address the remainder of their assignments of error, as they are premature. The

judgment of the Medina County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed

and cause remanded.

CARR, J., concurs.

BELFANCE, P.J., concurs separately.

BELFANCE, Presiding Judge, concurring.

{¶17} I concur because the trial court should interpret Section 706 of the Lafayette Township Zoning Resolution in the first instance. I write separately to emphasize that the trial court should not feel constrained by what may be perceived as this court's interpretation of Section 706. While this court has listed two possible interpretations of Section 706, these may not be the only reasonable interpretations. Further, I would note that it is also possible that the record before the trial court may not provide sufficient evidence to allow for a meaningful interpretation and application of Section 706; if that is the case, it should be determined whether additional evidence can be taken pursuant to R.C. 2506.03 or whether a remand to the Lafayette Township Board of Zoning Appeals is necessary.