[Cite as *Hoover v. Elyria*, 2014-Ohio-1783.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF LORAIN | ) | | |

| | |
|---|---|
| JAMES P. HOOVER | C.A. No.     12CA010288 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF ELYRIA, OHIO | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.     12CV176326 |

DECISION AND JOURNAL ENTRY

Dated: April 28, 2014

MOORE, Presiding Judge.

{¶1}   Appellant, City of Elyria ("the City"), appeals from the September 5, 2012 judgment entry of the Lorain County Court of Common Pleas.  We affirm, in part, and reverse, in part.

I.

{¶2}   Appellee, James P. Hoover, is employed as an assistant superintendent in charge of operations at the City of Elyria's water pumping plant.  In October of 2011, Mr. Hoover was allegedly smoking inside a City building, and an employee reported that Mr. Hoover blew smoke in his face.  Also, on October 5, 2011, Mr. Hoover allegedly made several racially discriminatory comments toward Lamont Jackson, an African-American, part-time employee; calling him "Black Buck," "Big Black Buck," and "BBB" repeatedly throughout the work day.  Mr. Hoover is reported as having made these comments in front of other employees, including Sam Jacobs, Jr., an assistant superintendent, Mike Constantino, an independent contractor, and other

subordinate employees. Sam Jacobs, Jr. admonished Mr. Hoover for making these comments, and reported this, and the smoking incident, to Sam Jacobs, Sr., the plant superintendent.

{¶3}    Mr. Hoover attended a pre-disciplinary hearing regarding the smoking violation, which resulted in a twenty-day unpaid suspension from work. Subsequently, Mr. Hoover attended a pre-termination hearing regarding the discriminatory comments, wherein he admitted to calling Mr. Jackson "Black Buck" because he was wearing another employee's coveralls with the name "Buck" on them. However, Mr. Hoover denied intending this comment as anything other than a "bad joke." Mr. Hoover was immediately terminated for making racial comments in violation of Elyria Codified Ordinance 165.29, the City's anti-discrimination policy.

{¶4}    Mr. Hoover appealed this decision to the Elyria Civil Service Commission ("the Commission"). At the hearing before the Commission, Mr. Hoover again admitted to calling Mr. Jackson "Black Buck" because "unlike the other two Bucks, this Buck actually works." After conducting a full hearing on the matter, the Commission reduced Mr. Hoover's suspension for the smoking violation to ten days without pay. Additionally, instead of upholding his termination, the Commission suspended Mr. Hoover for forty-five days without pay for violating the City's anti-discrimination policy. The Commission also determined that these suspensions should run concurrently.

{¶5}    Pursuant to R.C. 2506.01(A), Mr. Hoover appealed the Commission's decision to the Lorain County Court of Common Pleas. The trial court affirmed Mr. Hoover's ten day suspension for the smoking violation, and vacated his forty-five day suspension for violating the anti-discrimination policy. In doing so, the trial court issued findings of fact, stating:

* * *

1. that [Mr. Hoover] violated [the City's] Non-Smoking Work Place policy by smoking in a [C]ity building (the Water Pumping Plant), and that this was [Mr. Hoover's] second violation of this policy;

2. that on October 5, 2011, once at the start of the day and once later in the day, [Mr. Hoover] referred to an African-American [C]ity employee, [Mr. Hoover's] subordinate in the work place, as "Black Buck," purportedly joking with the employee about having the trade label, "Buck," on the front of his coveralls, and to distinguish the employee from two other employees in the water department, nicknamed "Buck" and "Lil Buck;"

3. that while [Mr. Hoover] intended the comments as a joke, neither the affected employee nor the others who heard the comment were amused, but rather were[] offended and embarrassed; and,

4. that after the second occasion, [Mr. Hoover's] co-workers admonished him for the comments.

Further, in its conclusions of law, the trial court cited Elyria Codified Ordinance 165.29(a)(1), but only analyzed a portion of the ordinance regarding harassment. The court made no reference to the sections of the code regarding discrimination. In focusing on "harassment," the trial court relied upon several Federal and Ohio cases involving Title VII actions. Those cases discuss the type, and duration, of conduct giving rise to hostile work environments. Based upon this analysis, the trial court reasoned that "the term, *harassment*, regardless of motive, requires repeated behavior, or at least more than two instances of conduct that occur on the same day." (Emphasis sic.) Further, the trial court held that "although [Mr. Hoover's] remarks to his subordinate could be viewed as racially charged, and, if repeated, could certainly give rise to a claim of harassment, [Mr. Hoover's] conduct on October 5, 2011, was extinguished the same day, and did not constitute harassment, as the term is used in [Elyria Codified Ordinance] 169.25[.]" (Emphasis omitted.) As such, the trial court concluded that "[Mr. Hoover] neither engaged in the harassment of an employee by reason of his race, nor violated [Elyria Codified Ordinance] 16[5].2[9]."

{¶6} The City appealed, raising two assignments of error for our consideration.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT UTILIZED FEDERAL TITLE VII "HOSTILE WORK ENVIRONMENT" LAW TO DETERMINE WHETHER [MR.] HOOVER'S CONDUCT VIOLATED THE CITY OF ELYRIA'S ANTI-DISCRIMINATION POLICY.

{¶7}    In its first assignment of error, the City argues that the trial court erred in relying upon Title VII case law to determine whether Mr. Hoover's comments to Mr. Jackson violated Elyria Codified Ordinance 165.29.[1]  Specially, the City argues that the trial court's reliance upon Title VII is misplaced because it "was never meant to preclude a municipal employer from disciplining a supervisor who makes racially-charged comments toward a subordinate part-time employee, even when those comments are made over the course of a single work day."

{¶8}    Administrative appeals initiated under R.C. 2506.01 require the trial court to "consider[] the entire record before it and 'determine[] whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.'" *Summit Cty. v. Stoll*, 9th Dist. Summit No. 23465, 2007-Ohio-2887, ¶ 9, quoting *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000).  Based on its review, the trial court may "affirm, reverse, vacate, or modify the order[.]" R.C. 2506.04.  The trial court's judgment "may be appealed by any party on questions of law." *Id.*  Whether the trial court abused its discretion is "[w]ithin the ambit of 'questions of law' for appellate court review." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984), fn.4.  An appellate court's review in such an instance, however, "does not include the same extensive power to weigh 'the preponderance of substantial, reliable, and probative evidence,' as

---

[1] We note that the City did not challenge the trial court's resolution of the smoking policy violation.

is granted to the common pleas court." *Henley* at 147; *Kisil* at 34, fn.4. Rather, we must affirm the trial court's decision unless we find as a matter of law that the decision is not supported by a preponderance of substantial, reliable and probative evidence. *Stoll* at ¶ 10, citing *Kisil* at 34. "Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Henley* at 147, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St. 3d 257, 261 (1988).

{¶9} Elyria Codified Ordinance 165.29(a)(1) states that:

The City is an Equal Opportunity Employer and is committed to a consistent effort in maintaining a work environment free of *discrimination*, and to prohibit harassment of any kind[,] of and by its employees and applicants[,] due to race, color, religion, sex, including sexual harassment, national origin, disability, age (40 years or older) or veteran status. In furtherance of the City's goal to create an environment for all City employees and visitors, which is fair and free from *discrimination* and harassment and of sexual coercion, the City hereby adopts a *discrimination*, harassment and sexual harassment policy and procedures as the basis for employee education and complaint resolution. Such policy shall fully comply with applicable Federal and State laws, rules, regulations and guidelines in the area of *non-discrimination* and harassment in employment. *Discrimination*, harassment and sexual harassment *shall not be tolerated and are prohibited*.

(Emphasis added.) Further, Elyria Codified Ordinance 167.02(e) defines discrimination as "to distinguish, differentiate, treat separately or segregate on the basis of race, religion, color, sex, national origin or handicap."

{¶10} Here, the trial court's order demonstrates that it failed to consider Elyria Codified Ordinance 165.29(a)(1) in its entirety, and, in doing so, limited its analysis to whether Mr. Hoover's comments amounted to harassment/hostile work environment. The record indicates that: (1) the City originally terminated Mr. Hoover for making racial comments "in direct violation of the City's *discrimination* policy," (2) Mr. Hoover appealed his termination "for an alleged *discriminatory* act" to the Commission, and (3) the Commission reduced Mr. Hoover's sanction to a forty-five day unpaid suspension "for his violation of the City's *anti-discrimination*

policy." (Emphasis added.) Further, upon review of the Commission's hearing transcripts, although the City referenced racial insensitivity and racial harassment, it never argued that Mr. Hoover should be disciplined solely because his comments created a hostile work environment, or a Title VII violation.

{¶11} In its order, the trial court concluded that the record supported the Commission's determination that Mr. Hoover called Mr. Jackson "Black Buck" at least twice in front of other employees, and that both Mr. Jackson and the other employees were "offended and embarrassed" by these comments. Additionally, the trial court acknowledged that Mr. Hoover's "remarks to [] [Mr. Jackson] could be viewed as racially charged[.]" However, instead of reviewing the Commission's interpretation and application of Elyria Codified Ordinance 165.29(a)(1), the trial court applied Federal Title VII law and overturned the Commission's decision to suspend Mr. Hoover because "regardless of motive, [harassment] requires repeated behavior, or at least more than two instances of conduct that occur on the same day." In fact, the court should have considered the entirety of Elyria's anti-discrimination code and determined whether there existed a preponderance of substantial, reliable, and probative evidence in the record before it to support the Commission's decision.

{¶12} Therefore, based upon careful review of the record, we conclude that the trial court failed to properly consider the Commission's application and interpretation of Elyria Codified Ordinance 165.29(a)(1), in order to determine whether Mr. Hoover's comments violated the City's anti-discrimination policy, and whether the Commission's decision to suspend Mr. Hoover was supported by the preponderance of substantial, reliable, and probative evidence. *See Stoll*, 2007-Ohio-2887, ¶ 9, quoting *Henley,* 90 Ohio St.3d 147; *see also Lee v. Lafayette Twp. Bd. of Zoning Appeals*, 193 Ohio App.3d 795, 2011-Ohio-2086, ¶ 11 (9th Dist).

{¶13} Accordingly, the City's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS ITS FINDINGS OF FACT ARE NOT SUPPORTED BY THE WHOLE RECORD.

{¶14} In its second assignment of error, the City argues that the trial court erred in finding that Mr. Hoover only made two isolated comments to Mr. Jackson on October 5, 2011. Specifically, the City maintains that Mr. Hoover made several "racially-charged" comments to Mr. Jackson throughout the work day, even after being admonished by another supervisor.

{¶15} Based upon our resolution of the first assignment of error, the City's second assignment of error is moot and we decline to address it.

### III.

{¶16} In sustaining the City's first assignment of error, and deeming its second assignment of error moot, the judgment of the Lorain County Court of Common Pleas is affirmed, in part, reversed, in part, and this cause remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to each party.

_____
CARLA MOORE
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

AMANDA R. DEERY, Assistant Law Director, for Appellant.

MICHAEL P. HARVEY, Attorney at Law, for Appellee.