[Cite as *8491 Mayfield Acquisitions, L.L.C. v. Chester Bd. of Zoning*, 2021-Ohio-898.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| 8491 MAYFIELD ACQUISITIONS, LLC, | : | **O P I N I O N** |
| Appellee, | : | |
| - vs - | : | **CASE NO. 2020-G-0261** |
| CHESTER TOWNSHIP BOARD OF ZONING APPEALS, | : | |
| Appellant. | : | |

Appeal from the Geauga County Court of Common Pleas, Case No. 2019 A 000834.

Judgment: Affirmed.

*Richard N. Selby, II*, and *Grant J. Keating*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, Ohio 44077 (For Appellee).

*Kevin M. Butler* and *Joseph M. Muska*, McDonald Hopkins LLC, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114 (For Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Chester Township Board of Zoning Appeals ("the BZA"), appeals the trial court's judgment reversing the denial of area use variances applied for by appellee, 8491 Mayfield Acquisitions, LLC ("Mayfield"). The judgment is affirmed.

{¶2} Through a foreclosure sale, Mayfield purchased a 0.91-acre lot in a commercially zoned district in Chester Township. The lot contains a vacant building that

may have once been a home but was converted to use as a restaurant. The lot is a grandfathered property that does not conform with current zoning requirements.

{¶3} In 2019, Mayfield applied to the BZA to allow the following four area variances in order to construct an auto parts store on the lot: (1) reducing a side yard from 20 feet to 3.95 feet, (2) reducing the front building setback from 225 feet to 123.93 feet, (3) reducing the rear building setback from 70 feet to 38.31 feet, and (4) reducing the number of parking spaces from 32 to 30.

{¶4} At a public hearing before the BZA, Mayfield emphasized that if the variances were granted, its plans would be consistent with the character of the neighborhood, as the parcel is surrounded by buildings that are equidistant if not closer to the street than Mayfield's proposal. It noted that those lots are almost entirely covered in concrete, as is the lot at issue here. Further, Mayfield maintained that its plan would be more compliant with the zoning regulations, as it would increase space on all four sides of the lot, create more green space, and remove a portion of the existing parking lot that encroached on a neighboring property. Mayfield argued that strict adherence to the zoning setback requirements essentially rendered the lot unusable. Some BZA members raised concerns with traffic flow, the substantial size of the requested variances, and the location of a planned retention pond. After further discussion between the BZA members and the zoning inspector, the BZA denied Mayfield's application.

{¶5} Mayfield appealed the BZA's decision to the trial court. In the administrative record, the BZA approved findings of fact as follow:

> James Martynowski, representing Osborne Capital Group, Applicant, and 8491 Mayfield Acquisitions, LLC, property Owner of Record, presented plans for constructing a retail business later identified as O'Reilly Auto Parts.

2

The structure that was proposed to be removed was part of a nonconforming lot. The new building of 7,225 square feet required four variances beginning with a 45 percent variance requirement for a setback of the proposed building, an 80 percent side yard setback, 45 percent rear setback and a 6 percent variance for the number of parking spaces required. It was noted that Soil and Water did not review the size of the retention pond location and its location right off of the south side of Mayfield Road. Testimony was given that the owner purchased the property in a tax foreclosure sale. The documents as submitted lacked an architectural stamp.

{¶6} On administrative appeal, the trial court reviewed the evidence relative to the proposed variances, except the variance requested to eliminate two parking spaces, which did not appear to play a role in the BZA's decision. The trial court reversed the BZA's decision, concluding that the BZA's decision to deny the variances was arbitrary, unreasonable, and not supported by a preponderance of the substantial, reliable, and probative evidence.

{¶7} The BZA appeals, raising one assignment of error:

{¶8} "The trial court abused its discretion and acted unreasonably and arbitrarily when it applied an inappropriate standard of review and failed to find that the BZA's decision denying Mayfield's requested variances was supported by a preponderance of substantial, reliable, and probative evidence."

{¶9} On review of an administrative appeal under R.C. 2506.04, the trial court considers whether the administrative decision "is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." However, our review on appeal is more limited in scope than that of the trial court. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000), citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). This court must "affirm the common pleas court, unless

3

the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil* at 34; R.C. 2506.04 ("The judgment of the court may be appealed by any party on questions of law * * *."). "'Within the ambit of "questions of law" for appellate court review would be abuse of discretion by the common pleas court.'" *Burlington Coat Factory of Texas, Inc. v. Howland Twp. Bd. of Zoning Appeals*, 11th Dist. Trumbull No. 2018-T-0098, 2019-Ohio-2173, ¶ 9, quoting *Kisil* at 34, fn. 4.

{¶10} The Ohio Supreme Court has identified the "practical difficulties" standard for granting area variances. *Kisil* at syllabus; *Duncan v. Village of Middlefield*, 23 Ohio St.3d 83, 85-86, 491 N.E.2d 692 (1986). Although *Kisil* and *Duncan* involved municipal zoning variances, the practical difficulties test applies to townships as well. *Burlington* at ¶ 12; *but see Dsuban v. Union Twp. Bd. of Zoning Appeals*, 140 Ohio App.3d 602, 607-608, 748 N.E.2d 597 (12th Dist.2000) (recognizing split in appellate districts as to whether practical difficulties test applies to townships and holding it inapplicable). "While existing definitions of 'practical difficulties' are often nebulous, it can safely be said that a property owner encounters 'practical difficulties' whenever an area zoning requirement (*e.g.*, frontage, setback, height) unreasonably deprives him of a permitted use of his property." *Duncan* at 86. "The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." *Id.*

{¶11} The "practical difficulties" test as set forth in *Duncan* provides that the following non-exhaustive list of factors "be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property[:]

4

* * *   (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance;

(2) whether the variance is substantial;

(3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance;

(4) whether the variance would adversely affect the delivery of governmental services (*e.g.*, water, sewer, garbage);

(5) whether the property owner purchased the property with knowledge of the zoning restriction;

(6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; [and]

(7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Id.* at syllabus. "In weighing the *Duncan* factors, it has often been observed that no single factor is dispositive or controlling." *Kuhns v. Kent*, 11th Dist. Portage No. 2010-P-0002, 2010-Ohio-5056, ¶ 16, citing *Duncan* at 86. "There is also no requirement that the factors be applied mathematically." *Kuhns* at ¶ 16, citing *Winfield v. Painesville,* 11th Dist. Lake No. 2004-L-053, 2005-Ohio-3778, ¶ 28.

{¶12}   Here, the BZA maintains that the trial court erred by failing to afford the BZA the presumption that its decision was valid and by failing to defer to the BZA's conclusions that were within its expertise.  The BZA cites several of its conclusions that it argues were entitled to deference in applying the *Duncan* factors, including: (1) if parking were moved to the back of the building, then a larger building could be constructed; (2) Mayfield could put the existing building to new use; (3) the proposed plan could have been revised in some aspects to reduce the number or size of the variances; (4) the requested variances

5

were substantial; (5) only a right-turn could be made onto the exiting road due to an existing traffic signal; (6) Mayfield purchased the property with actual knowledge of the zoning restrictions, or it should be charged with such knowledge; and (7) the planned location of a retention pond along the road may allow for litter build-up.

{¶13} Aside from the requested variances being of a substantial nature, the above "conclusions" that the BZA argues should have been afforded deference are based upon questions and commentary of individual board members rather than on the BZA's findings. Several of these concerns were addressed by the BZA in a discussion of the *Duncan* factors after the conclusion of the public hearing:

> Ms. Betzer: Reena said let's go through the Duncan factors and see where we are. I think that's a good idea. What requirement would deprive you of the permitted use of it?
>
> Mr. Pona: We could build a retail store there, but not 7,200 square feet. So I would answer that we could not utilize that for retail space.
>
> Ms. Betzer: Will the lot in question yield a reasonable return without the variance? In other words, would that small a building pay the taxes?
>
> Mr. Pona: Probably not.
>
> Ms. Betzer: Okay, then the answer is no.
>
> * * *
>
> Ms. Betzer: * * * Is there a beneficial use of the lot without a variance? They answered no. He testified on Form 4 that required front and rear setbacks would make the parcel unbuildable.
>
> Mr. Pona: Beneficial use for them?
>
> Ms. Betzer: Beneficial use of the lot without the variance.
>
> Chair Ziganti: They answered with the same answer as in No. 1.

Ms. Betzer: Is the variance substantial? Yes. Will the essential character of the neighborhood be substantially altered or will adjoining lots suffer? I don't see any of that. Do you?

Mrs. Kanner: Traffic on Mayfield.

Chair Ziganti: Traffic as Reena mentioned.

Ms. Betzer: My guess is one more story [sic.] isn't going to help. Will the variance adversely affect the delivery of government services? No. Did the lot owner purchase with knowledge? This is one that Charles has trouble with. You think it should be yes. They should have known.

* * *

Ms. Betzer: Can the lot owner's predicament feasibly be obviated through some method other than a variance? Charles?

Mr. Pona: Yes, build a smaller retail space.

Chair Ziganti: One of the substantial issues is the type of business because it does require a heck of a large space for inventory. No doubt about it.

Ms. Betzer: Will the spirit and intent behind the zoning requirement be observed and substantial justice be done by granting the variance? It says that he is encouraging the green space, which is true, and he is getting the building centered and he is getting rid of an encroachment.

Mr. Pona: Yes and he is getting rid of an eyesore.

Mrs. Kanner: I don't think it's an eyesore.

Ms. Betzer: I do.

* * *

Ms. Betzer: I guess one extra question that in this case I would probably add on to the Duncan Factors is whether or not building something small would be economically feasible in that location and in this town.

Mrs. Fadorsen: To that, I'm not sure going this size building in Chesterland is economically feasible. To be honest with you I can't imagine that it could make money with the way it is now.

* * *

{¶14} Despite the discussion of the *Duncan* factors, the findings approved by the BZA set forth above do not contain a thorough *Duncan* analysis containing any consensus as to each factor. Although the trial court did not explicitly reference all of the above concerns of the BZA members, and did not give them the weight that the BZA believes was due, there is no indication that the trial court applied an incorrect standard of review.

{¶15} Instead, the trial court reviewed the whole record and individually assessed each *Duncan* factor. The court recognized several of the BZA members' concerns regarding the property but found that, despite the substantial nature of the requested variances, other factors weighed in favor of granting the variances. The court noted that the proposed site plan would not substantially alter the neighborhood. Rather, the court determined from the public hearing comments that the parcel is "surrounded by other commercial enterprises, most of which have similar non conforming setback issues of their own." Further, the court noted that it would not be a detriment to surrounding properties but actually would remove the encroachment on an adjacent property. Moreover, the court noted that strict application of the zoning requirements would render beneficial use of the property unlikely. With respect to the traffic concerns raised at the public hearing, the court noted that there was no expert testimony as to any adverse traffic effect, and the plan eliminated one of two exits to the road, which could assist in traffic safety. The BZA cites the court's traffic discussion as an example of the court failing to afford deference to the BZA's decision. However, the trial court need not give deference to mere speculation. Furthermore, there is no indication that any increase in traffic would be related to an *area* variance at issue here.

{¶16} Although the BZA couches its arguments in terms of the trial court failing to afford its conclusions deference, its arguments on appeal are akin to requesting this court give more weight to some comments made at the public hearing than to others. However, this court's review is limited, and we cannot reweigh the evidence. *See Kuhns*, 2010-Ohio-5056, at ¶ 23. We cannot say that the trial court's decision, as a matter of law, was not supported by a preponderance of reliable, probative, and substantial evidence or amounts to an abuse of discretion.

{¶17} Consequently, the BZA's assignment of error lacks merit, and the judgment is affirmed.


MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.